## LAWRENCE ET AL. v. LEATHERS.

[No. 4,400.    Filed October 9, 1903.]

MALICIOUS PROSECUTION. —*Complaint.*—*Proof.*—In an action for malicious prosecution it is essential for the plaintiff to aver and prove that the prosecution complained of was instituted maliciously and without probable cause. *p. 415.*

SAME.—*Malice.*—*A Question of Fact.*—In an action for malicious prosecution, malice is a question of fact for the jury. *p. 415.*

SAME.—*Probable Cause a Question of Law.*—The existence or non-existence of probable cause, upon the facts found by the jury, in an action for malicious prosecution, is a question of law for the court, and it is the duty of the court, the facts being uncontradicted, to instruct the jury as to whether probable cause did or did not exist. *p. 415.*

SAME.—*One Partner not Liable for Act of the Other.*—The fact that one of two joint owners of a certain boarding-house was guilty of the malicious prosecution of a guest, will not render the other liable in an action for damages. *p. 418.*

SAME.—*When Arrest Justified.*—The belief that justifies accusation and arrest must be founded upon facts and circumstances that would induce a reasonable and prudent man, mindful of the right of individual security possessed by every citizen, to act. *p. 419.*

SAME.—*Defense.*—*Acting on Advice of Attorney.*—The procuring of an arrest, upon the advice of a prosecuting attorney, is not a defense in an action for malicious prosecution, unless a correct statement of the facts were given to the attorney. *p. 420.*

TRIAL.—*Evidence.*—*Malicious Prosecution.*—In an action for malicious prosecution, the defendant in justification of his procuring plaintiff's arrest introduced a letter from a third party, and also called upon such third person to testify. *Held,* that by offering evidence supportive of the statements contained in the letter he thereby opened the door to plaintiff to introduce evidence to discredit the statements contained in the letter. *pp. 420, 421*

From the Superior Court of Marion County (61,710); *Vinson Carter,* Judge.

Action by David J. Leathers against Henry W. Lawrence and another. From a judgment for plaintiff, defendants appeal. *Affirmed in part and reversed in part.*

*Harrold Taylor*, for appellants.
*J. J. Rochford* and *J. M. Wall*, for appellee.

Roby, J.—Appellee sought by this action to recover damages from appellants for alleged malicious prosecution. Trial by jury; verdict for $1,300; remittitur of $500; judgment for $800, from which the appeal is taken. Motions made by the appellants for judgment on the answers to interrogatories, returned with the verdict, and for a new trial were overruled, such action being assigned as error.

The law govering suits for malicious prosecution has been established by numerous adjudications. It is essential to their maintenance to aver and prove that the prosecution complained of was instituted without probable cause and maliciously. *Helwig* v. *Beckner,* 149 Ind. 131, 133.

Malice is a question of fact to be determined by the jury. *Helwig* v. *Beckner, supra.*

The existence or non-existence of probable cause, upon facts found by the jury, is a question of law for the court. *Pennsylvania Co.* v. *Weddle,* 100 Ind. 138; *Cottrell* v. *Cottrell,* 126 Ind. 181; *Terre Haute, etc., Co.* v. *Mason,* 148 Ind. 578. The seventh instruction, given at the trial herein by the court of its own motion, correctly defined the term "probable cause." The tenth and twelfth instructions so given erroneously submitted to the jury generally, as an issue for its determination, the question as to whether probable cause for the prosecution existed. *Pennsylvania Co.* v. *Weddle, supra; Cottrell* v. *Cottrell, supra.*

The facts giving rise to the prosecution complained of were as follows: Appellant Lawrence was the owner of the Spencer House, a hotel in Indianapolis. On November 4, 1900, it was reported to him that a man who had registered at the hotel, under the name of Paul DeLury, and had been

occupying one of the rooms therein, had not occupied his room the night before, and that there was baggage therein. The man had left without paying his bill, amounting to $15. The baggage consisted of sample cases containing shoes, and an order-book bearing the name of a Cincinnati shoe house. DeLury had registered from St. Louis. White made inquiry thereafter, but was unable to learn of any salesman of the name. On January 19 following he inquired of one Sullivan, a traveling salesman from Cincinnati, who examined the cases, samples, and order-book, and told White that they were evidently from the Cincinnati Shoe Company, and belonged to a salesman named Leathers. White asked him to call upon the shoe company, upon his return home, and tell them where the samples were, and that they could have them by settling the bill. Sullivan did call upon the company, and thereafter wrote White as follows: "I called on Mr. Julian of the Cincinnati Shoe Company relative to the samples you have that were left by Mr. Leathers. He said he had written to you and thought you would send him samples if he would inform you as to the whereabouts of Leathers. I found out that Leathers lives in Indianapolis, and you can probably locate him by looking in the directory or calling on F. E. Brown or W. H. Ban, shoe merchants of E. Washington St. From Mr. Julian's remarks I do not think he cares to lose anything on this deal if he can help it, so you can act accordingly. He would like to get the samples without making good the bill you have against Leathers." The same day that this was received White also received a letter from the shoe company, as follows: "Cincinnati, Ohio, January 19, 1901. Manager Spencer House, Indianapolis, Indiana. Dear Sir: We understand from a traveling man, Mr. Sullivan, that you have a lot of our samples in your possession, left there by a man who was traveling for us and who, it seems, beat you out of a board bill and also beat us out of a lot of money. We would like to have these samples

and would probably give more for them than anybody else. Please write us the circumstances and see if we can not adjust the matter and get our shoes. We understand also that you would like to have this young man's address. If this matter is adjusted to our satisfaction we can tell you where to find him, and not four miles from your own office. Yours very truly, Cinti. Shoe Co."

After the receipt of these letters he looked in the city directory and found that there were only three persons named Leathers listed therein, the appellee's occupation being given as that of clerk. He thereupon visited one of the merchants indicated in Sullivan's letter, and asked him if he knew a traveling man by the name of Leathers. He said that he did know such a man; that he had traveled for the Cincinnati Shoe Company, but did not think that he was working for them at that time; that he lived on Park avenue. White then, without making any further inquiries, consulted a deputy prosecuting attorney, and made a statement of the facts, as he had ascertained them, to him. The attorney asked him if he could identify the man, and White said that he could not, but that one of his clerks could. The attorney told him that, according to his statement and the letters, he thought he had a good case. White had, at that time, no doubt but that Leathers was the man who had left the samples at the hotel. He had no acquaintance with or knowledge of him, and acted deliberately and without anger. Thereupon the attorney prepared and said appellant executed an affidavit charging appellee with the crime of unlawfully removing articles of value from a boarding-house, as defined by the act of March 3, 1897 (Acts 1897, p. 123, §7254b Burns 1901). The affidavit was at once filed, and a warrant for appellee's arrest issued by a justice of the peace. The warrant was served, and appellee placed under arrest. The hotel clerk, instead of identifying him as DeLury, stated that he had never seen

him before. The prosecution was then dismissed, and this action thereafter brought against White and Lawrence, it being averred in the second paragraph of the complaint upon which the jury found for appellee that said defendants were the owners and proprietors of a certain boardinghouse, and that defendants unlawfully procured plaintiff to be arrested.

It was evidently the theory of the pleader that such alleged joint ownership or partnership rendered the defendant Lawrence responsible for the alleged wrong by his codefendant White. Such relation in itself is not, however, sufficient to render the non-acting partner liable. In the absence of knowledge he would not be responsible for the act of his codefendant, unless it was made to appear that he had in some way authorized White to take the steps complained of. *Rosenkrans* v. *Barker,* 115 Ill. 331, 3 N. E. 93, 56 Am. Rep. 169; *Gilbert* v. *Emmons,* 42 Ill. 143, 89 Am. Dec. 412; *Marks & Co.* v. *Hastings,* 101 Ala. 165, 13 South. 297.

The jury, with the general verdict, returned answers to interrogatories, from which it appears, without conflict or contradiction, that appellant Lawrence had nothing personally to do with the prosecution complained of; that he did not know that an affidavit would be made or filed until after the prosecution had terminated; that he did not advise or suggest the making of such affidavit, nor authorize or direct appellant White to make the same; and that White was neither owner nor part owner of the hotel. These facts are sufficient to exonerate said appellant from liability, no matter what construction be given the complaint. His motion for judgment upon the interrogatories and their answers, notwithstanding the general verdict, should have been sustained.

It was the duty of the court, the facts not being controverted, to instruct the jury as to whether probable cause for the prosecution complained of did or did not exist.

When the facts are disputed the court instructs hypothetically or otherwise, leaving the jury to find the fact. Probable cause is defined as "that apparent state of facts found to exist upon reasonable inquiry; that is, such inquiry as a given cause renders convenient and proper, which would induce a reasonably intelligent and prudent man to believe the accused person had committed, in a criminal case, the crime charged." *Hutchinson* v. *Wenzel,* 155 Ind. 49; *Lacy* v. *Mitchell,* 23 Ind. 67.

The affidavit made by White was based upon the second section of the act, and proceeded upon the theory that appellee had removed baggage from the hotel, which at the time was subject to the landlord's lien. *State* v. *Engle,* 156 Ind. 339. There may be evidence tending to show that DeLury did remove part of his baggage, but the fact is decidedly obscure. He surely left a considerable amount. There does not appear to have been any occasion for haste in the institution of a criminal action. The offense charged was not of such an aggravated nature as to arouse apprehension that appellee, known to be a resident of Indianapolis for some years, would become a fugitive from justice on account of it.

The identity of Leathers with DeLury was the important fact. Goods once in the possession of Leathers had been left at the hotel by DeLury. White had the means of identification at hand. He had only to call upon his employe in order to be certain. Instead of taking any steps to learn the truth, he assumed the identity of the person, notwithstanding the difference of name. Appellee was entitled to the presumption of innocence, and such facts as White had learned regarding him did not tend to weaken such presumption. The belief that justifies accusation and arrest must be founded upon facts and circumstances that would induce a reasonable and prudent man, mindful of the right of individual security possessed by every citizen, to act. Had White been arrested himself under exactly

the same circumstances, he would likely not be satisfied with the inquiry made. It is believed he did not exercise that degree of reasonable inquiry that the circumstances and situation suggested, and the court should have so instructed the jury. The result reached was, upon this part of the case, correct, and the error is not, therefore, a reversible one.

The statement of fact made to the prosecuting attorney was not a correct one. It included the identification of the person by the employe. Such identification was not made, and had not been made. The advice of the attorney, based upon such information, is not a defense. *Flora* v. *Russell,* 138 Ind. 153; *Paddock* v. *Watts,* 116 Ind. 146, 9 Am. St. 832.

The general rule is that probable cause is established by facts known to the prosecutor at the time the criminal action was instituted. The letter written by the shoe company, and above set out, was directly relevant to that issue, being, as it was, one of the conditions in the light of which White acted. Appellants took the deposition of W. A. Julian, president of the shoe company, who testified that he sent the letter in question to the manager of the hotel. He also testified in chief that appellee was employed by the shoe company in the spring of 1900, and left its employment in the following November; that he carried its samples; that he did not return the samples, and that he carried an order-book which was not returned; that he saw the samples in question at the Spencer House on October 10, 1901; that he never had any man named DeLury in his service, and knew no man by that name; that he had a call from Sullivan, and immediately thereafter wrote the letter referred to; that Sullivan told him that appellee had left without paying his board bill.

On cross-examination the witness was compelled, over objection, to testify in effect, that the statement of the letter that appellee had "beat us out of a lot of money" was

not true. He was also compelled to testify that before he wrote the letter he had been informed by appellee that the sample case had been stolen from him. Appellants did not know the falsity of the letter, or the bad faith of the writer. They acted only upon its statements. They were in no-wise responsible for the wrong done by the shoe company to the appellee, either in writing the letter or prior thereto. Had they chosen to introduce the letter in evidence without attempting to support its statements by oral testimony, the appellee could not have been permitted to disprove such statements. "Those facts and circumstances which are known to the prosecutor at the time he instituted the prosecution are to be alone considered in determining the question of probable cause." *Pennsylvania Co.* v. *Weddle,* 100 Ind. 138; *Walker* v. *Pittman,* 108 Ind. 341.

The oral evidence delivered by the witness Julian tended to give weight to that which had been written by him. His opportunity of knowing the truth was exhibited. The tendency of the questions asked and the answers made by him was to give probability to the assertion made in the letter. They directly connected appellee with the sample case and order-book and made the truth of the statement an important element in the trial. *Walker* v. *Pittman, supra.* The facts stated by him were not communicated to appellants prior to the prosecution. Appellants, by offering evidence supportive of the statements contained in the letter, opened the door to appellee, and there was therefore no error in admitting evidence tending to discredit such statements. Elliott, App. Proc., §628.

The instructions given by the court, taken as a whole, correctly state the law as applicable to the evidence, and do not therefore furnish ground for reversal. *Hutchinson* v. *Wenzel,* 155 Ind. 49. Those requested and refused were in part covered by those given, and, in so far as they related to the question of probable cause, were correctly refused; its existence not being, as heretofore stated, deducible from the

facts proved. No error appears sufficient to justify a reversal of the judgment as against appellant White. Upon the whole evidence, the result reached seems to have been a correct one, as to him.

The death of appellee since the appeal having been suggested, it is ordered that the judgment against appellant White be affirmed as of the date of submission, and that as to appellant Lawrence the judgment be reversed, and the cause remanded, with directions to sustain his motion for judgment notwithstanding the general verdict.