JOHN W. BARROW *v.* WEDDLE BROTHERS CONSTRUCTION.

[No. 1-873A153. Filed September 30, 1974. Rehearing denied October 31, 1974.]

*Richard L. Wilder, Rogers, Wilder & McDonald,* of Bloomington, for appellant.

*Frank A. Barnhart, Baker, Barnhart, Andrews, Baker &
Mann,* of Bloomington, for appellee.

LYBROOK, J.—Plaintiff-appellant Barrow appeals from a
negative judgment upon his complaint for malicious prosecu-
tion against his former employer Weddle, presenting the fol-
lowing issues for review:

(1) Whether the decision of the trial court on appellant's
claim of malicious prosecution is contrary to the evidence
and contrary to law.

(2) Whether appellant was entitled to judgment on the
claims of abuse of process and defamation of character.

Contemporaneous with judgment, the court entered the
following findings of fact:

"FINDINGS OF FACT

1. That the defendant, Weddle Bros. Construction Co., Inc.,
was an Indiana Corporation during the time material to this
cause of action.

2. That the plaintiff was an employee of the defendant and
the plaintiff voluntarily terminated the employment rela-
tionship on July 21, 1967.

3. That on or about the 22nd day of July, 1967, Harold
Weddle, the president of the defendant corporation, au-
thorized one Wayne C. Andrews, a private security investi-
gator employed by the defendant corporation, to undertake
an investigation of the circumstances of the plaintiff leaving
the employment of the corporation.

4. That the said Wayne C. Andrews conducted said investi-
gation as requested, reduced the results of said investiga-
tion to writing, and under date of July 24, 1967, submitted a
written report of the results of his investigation to the
Prosecuting Attorney of Monroe County, Indiana.

5. That on the 24th day of July, 1967, the said Wayne C.
Andrews signed a criminal affidavit charging the plaintiff
with commission of the criminal offense of theft, which
affidavit was sworn to before Thomas A. Berry, the Prose-
cuting Attorney of Monroe County, Indiana, and was
approved by the said Prosecuting Attorney of Monroe
County, Indiana; and that said theft affidavit was filed as
Cause Number C67 S141 in the Monroe Circuit Court at
Bloomington, Indiana, on the 25th day of July, 1967.

6. That at the time he signed said affidavit, Wayne C.

Andrews was an agent of the defendant corporation and was acting within the scope of authority granted to him by Harold Weddle, the president of the defendant corporation, in that he had been instructed to take such action on behalf of the corporation.

7. That on August 23, 1967, the plaintiff's attorney of record filed a Motion to Quash the affidavit filed on July 25, 1967, which was not ruled on by the Judge of the Monroe Circuit Court; that on November 30, 1967, the Prosecutor of Monroe County prepared an amended affidavit which was signed and sworn to by Douglas R. Bridges, the then duly appointed and acting Deputy Prosecuting Attorney of Monroe County, Indiana; that there is no record that said amended affidavit was filed in said cause.

8. That after said charge of theft had been filed in the Monroe Circuit Court, Harold Weddle, the president of the defendant corporation, had a telephone conversation with the plaintiff and advised the plaintiff that he would cause said criminal charge to be dismissed if the plaintiff would pay or make satisfactory arrangements to pay a personal note owed to the defendant corporation; that Wayne C. Andrews had no contract with or conversations with the plaintiff prior to signing said criminal affidavit.

9. That on December 6, 1967, a criminal affidavit was filed in the Monroe Circuit Court as Cause Number C67 S179 charging the defendant, John W. Barrow, with commission of the offense of forgery; that said affidavit was signed and sworn to by Douglas R. Bridges, a Deputy Prosecuting Attorney of Monroe County, Indiana, before Thomas A. Berry, the Prosecuting Attorney of Monroe County, Indiana, and without the knowledge of the said Harold Weddle, president of the defendant corporation.

10. That there is no evidence that said amended theft affidavit dated November 30, 1967, and said forgery affidavit filed December 6, 1967, were commenced or caused to be commenced by any officer, employee or agent of the defendant corporation, including the said Wayne C. Andrews.

11. That on December 17, 1968, the plaintiff filed a Motion to Dismiss the Theft charge filed under Cause Number C67 S141, by his attorney, James Cotner, alleging delay of trial under Rule 1-4D, of the Indiana Supreme Court, which motion was never ruled upon by the trial judge.

12. That said criminal charge of theft terminated favorably for the plaintiff on August 28, 1969, when the Prosecuting Attorney of Monroe County, Indiana, filed a Motion to Dismiss said charge, which motion was sustained by the

Judge of the Monroe Circuit Court; that the forgery charge filed as Cause Number C69 S179 was dismissed on motion of the Prosecuting Attorney of Monroe County, Indiana, on said date of August 28, 1969.

13. That the said Wayne C. Andrews, as an agent of the defendant corporation, did act in good faith and fully and truthfully made known all facts which were known to him, or reasonably apparent to him, by written report to the said Thomas A. Berry, Prosecuting Attorney of Monroe County, Indiana; and that said Prosecuting Attorney approved the filing of said criminal charge against the plaintiff and authorized the procurement of a warrant for the plaintiff's arrest on said charge."

## I.

In an action for malicious prosecution, the plaintiff must prove (1) that the defendant instituted or caused to be instituted a prosecution, (2) that the defendant acted with malice, (3) that there was a want of probable cause for instituting the prosecution, and (4) that the prosecution was terminated in the plaintiff's favor. *Stivers* v. *Old National Bank* (1970), 148 Ind. App. 196, 264 N.E.2d 339; *Cassidy* v. *Cain* (1969), 145 Ind. App. 581, 251 N.E. 2d 852.

With respect to the original affidavit for theft filed on July 25, 1967, the trial court found against appellant on the element of want of probable cause, by determining in the conclusions of law, that appellee was entitled to the defense of advice of counsel. The principles governing the application of this defense were summarized in *Indianapolis Traction and Terminal Co.* v. *Henby* (1912), 178 Ind. 239, 97 N.E. 313. Therein, the court stated:

"Where, before the commencement of the prosecution, the prosecutor honestly, and in good faith, sought advice of reputable counsel, and made to such counsel a full and true statement of all the material facts within his knowledge, and such counsel thereupon advised the prosecutor that the facts so stated warranted the prosecution, and, relying on the advice, the prosecutor in good faith commenced the action, such facts constitute probable cause, and, consequently, a complete defense against an action for malicious

prosecution, although the advice given was erroneous. *Scotten* v. *Longfellow* (1872), 40 Ind. 23; *Terre Haute, etc., R. Co.* v. *Mason, supra; Paddock* v. *Watts* (1888), 116 Ind. 146, 18 N.E. 518, 9 Am. St. 832; *Flora* v. *Russell* (1894), 138 Ind. 153, 37 N.E. 593; *Lawrence* v. *Leathers* (1903), 31 Ind. App. 414, 68 N.E. 179; *Shea* v. *Cloquet Lumber Co.* (1904), 92 Minn. 348, 100 N.W. 111; 1 Ann. Cas. 930 and note on page 932; note to *Ross* v. *Hixon* (1891), 26 Am. St. 123, 127.

"The prosecutor must have sought the advice of counsel in good faith, and not as a shelter from a possible action for malicious prosecution. He must, to some extent, have been doubtful of his legal rights, when he sought the advice, and he must, in good faith, have pursued the directions of his attorney, in the belief that the attorney correctly and honestly advised him. *McCarthy* v. *Kitchen* (1877), 59 Ind. 500; note to *VanMeter* v. *Bass* (1907), 18 L.R.A. (N.S.) 49, 50, 51. The omission, in the statement of facts to counsel, of any material fact within the prosecutor's knowledge deprives him of a reliance on probable cause as a defense by reason of advice of counsel. *Scotten* v. *Longfellow, supra; Flora* v. *Russell, supra; Lawrence* v. *Leathers, supra; Dunlap* v. *New Zealand, etc., Ins. Co.* (1895), 109 Cal. 365, 42 Pac. 29; *Flikkie* v. *Oberson* (1900), 82 Minn. 82, 84 N.W. 651; *Jackson* v. *Bell* (1894), 5 S. Dak. 257, 58 N.W. 671; *Dreyfus* v. *Aul* (1890), 29 Neb. 191, 45 N.W. 282; *Brown* v. *Smith* (1876), 83 Ill. 291; note *VanMeter* v. *Bass* (1907), 18 L.R.A. (N.S.) 49, 55-57."

Appellant first argues that appellee failed to introduce sufficient evidence to establish the advice of counsel defense.

The original theft affidavit was signed and sworn to by an investigator employed by defendant corporation, and was approved by the prosecuting attorney. While neither of the men testified at trial, Defendant's Exhibit 1, a report prepared by the investigator and submitted to the prosecuting attorney on July 24, 1967, evidences the factual disclosure upon which appellee's defense rests. This report reads, in relevant part:

"On July 21, at 6:00 p.m. John Wayne Barrow, age 24, last known address post office box 833, Vernal Pike, left his place of employment, Weddle Construction Company, and hasn't been heard of since.

"Saturday, July 22, Harold Weddle went to his office and in the petty cash was a note that Barrow had left explain-

ing that he had taken three day's salary which was due to him and amounted to about $73. Also missing from the safe an envelope containing a personal note to Mr. Harold Weddle in the amount of $2800. This note was taken out 1-28-66 and was to be payable within three years. This was to be paid back at the rate of $15.00 per week. Deductions from his pay started 1-10-67. This note was signed by John Barrow.

"Barrow had access to all the books and had authority to purchase material, equipment, etc. His capacity was bookkeeper and IBM Controller. He was authorized to make out checks, sign them and was a trusted employee with privileges which included auditing books and making entries on ledgers, etc.

"On March 13, 1967, Barrow took it upon himself to withdraw the $15 per week he had been paying in since January 10, 1967, a total of $120. He continued to pay in $15.00 per week. Then on March 31, 1967, he withdrew from his special account $30.00 more. This procedure was continued until June 30, 1967 and at that time he made another withdrawal of $90.00. The total amount paid in from January 10, 1967, to 6-30-67 was $240.00. During this time regular $15 deductions were taken out of his pay.

"Also in the envelope which Barrow took from the safe was a personal note of Dale Rightlay. This note was for $3200."

The above report, together with the prosecuting attorney's act of approving the affidavit, constitute evidence that appellee was acting under the advice of counsel. Appellant contends, however, that material facts known to the appellee were omitted from the investigator's report.

Appellant first submits that prior to the date of the written report, he had reaffirmed his liability on the missing $2800 note in a telephone conversation with appellee's president. He argues that inclusion of this fact in the report was essential for full and fair disclosure. However, while the evidence conclusively establishes the fact of the telephone call and appellant's admission of his debt therein, it also reveals that the call actually occurred subsequent to the date of the written report.

In his reply brief, appellant argues that appellee had a

continuing duty to disclose material facts and that the information should have been revealed to the prosecuting attorney immediately following the telephone conversation.

We concur in appellant's assertion that the duty of disclosure imposed upon one seeking the benefit of the advice of counsel defense is continuing. See, *Clarke* v. *Montgomery Ward & Co.* (4th Cir. 1962), 298 F.2d 346. However, the question of whether appellant's admission of his debt was material and therefore essential for a full and fair disclosure presents a question of law which, in our opinion, must be resolved against appellant.

Contrary to the rule at common law, promissory notes and other written instruments may be subjects of theft under our statutes. See, IC 1971, 35-17-5-13, Ind. Ann. Stat. § 10-3040 (Burns Supp. 1974). If, in fact, appellant took the $2800 note upon leaving his employment, the subsequent admission of his debt would not be dispositive of the question of whether, at the time of the taking, he was possessed of the intent to deprive appellee of its use, benefit, or value. See, IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1974).

Appellant also contends that appellee's failure to indicate in the investigative report that the debt evidenced by the other missing note had been satisfied, constituted a material omission. Again, we do not agree.

To be "property" and, hence, the subject of theft, the note must have possessed some value. See, IC 1971, 35-17-5-13, *supra.* However, in *Roberts* v. *State* (1914), 181 Ind. 520, 104 N.E. 970, our Supreme Court held that the felonious taking of a check would constitute petit larceny even in the absence of funds in the bank to meet the check. A like rule would appear to apply to the second note in the case at bar. The fact of its payment did not render the note valueless and, therefore, an improper subject of theft. Moreover, as is apparent from a reading of IC 1971, 35-17-5-12, Ind. Ann. Stat. § 10-3039 (Burns Supp. 1974), the determination of the value of property which is the

subject of theft is critical to the question of the proper penalty to be imposed rather than that of guilt or innocence of the accused.

Finally, with respect to the question of full and fair disclosure to the prosecuting attorney, appellant asserts that an audit of appellee's books completed by August 15, 1967, established that he took only money which was owed to him by appellee. However, appellant has wholly failed to demonstrate any misstatements or omissions in the investigator's report concerning his removal of the funds in question.

Appellant having failed to demonstrate any material factual omissions in the investigative report, we are unable to conclude that the trial court erred in finding that appellee made a full and true disclosure of facts to the prosecuting attorney.

Presenting further argument on the issue of probable cause, appellant directs our attention to *Paddock* v. *Watts* (1888), 116 Ind. 146, 18 N.E. 518. Therein, the court stated that a finding of want of probable cause would be justified where it is apparent from the circumstances that the person initiating a criminal prosecution was acting with some collateral purpose other than the vindication of the law.

In the case at bar the trial court specifically found that after the charge of theft had been filed, appellee's president, during a telephone conversation with appellant, offered to cause the charge to be dismissed if appellant would pay or make satisfactory arrangements to pay the note owed to the corporation.

Appellant would have us hold that this fact conclusively establishes a collateral or improper purpose by appellee and, therefore, want of probable cause as a matter of law. However, we do not believe that *Paddock, supra,* dictates such a result.

The effect of the prosecutor's motives upon the issue of probable cause was more fully considered in *Benson* v. *Bacon* (1884), 99 Ind. 156. Therein, the court said:

"If there was probable cause for instituting the prosecution, then the person who instituted it is not liable to an action for malicious prosecution although he was not influenced by a desire to promote the public good. It can not, therefore, be inferred from evidence that the prosecution was not undertaken for a public purpose, that there was no probable cause. If it be shown that there was probable cause for the prosecution, then the defense is made out, although it may not be proved that the prosecution was undertaken for a public purpose. It is not necessary to show facts constituting probable cause, and, in addition to showing such facts, also show that the motive which influenced the defendant in setting the prosecution on foot, was to promote the public good. If the facts within the knowledge of the defendant were such as would have induced a prudent man, acting for the public good, and not influenced by ill-will or malice, to institute the prosecution, then there was probable cause, and if probable cause the defendant can not be held liable, even though he may have been influenced by ill-will. The fact that there was ill-will or malice may, no doubt, be considered in determining whether there was or was not probable cause, but from the fact alone that the prosecution was not undertaken from public motives, want of probable cause can not be inferred as a matter of law. Professor Greenleaf says that 'the want of probable cause is a material averment,' and that 'It is independent of malicious motive, and can not be inferred, as a necessary consequence, from any degree of malice which may be shown.' 2 Greenl. Ev., section 454."

It remains the law in this State that lack of probable cause may not be inferred from malice. See, *Stivers* v. *Old National Bank, supra.* Logic, therefore, dictates that while it may be of some relevance, a finding of a collateral or improper purpose can not, as a matter of law, compel a finding of want of probable cause.

Where, however, as in the case at bar, a defendant seeks a finding of probable cause by interposing the defense of advice of counsel, a finding of collateral or improper purpose becomes relevant for a reason different than that urged by appellant. To be entitled to the benefit of the defense, the defendant must have sought the advice of

counsel in good faith. *Indianapolis Traction Co.* v. *Henby,* *supra.* Establishing a collateral or improper purpose could preclude a finding of probable cause on the basis of the defense. Therefore, the question which we must resolve is whether appellee's offer to cause termination of the theft charge upon satisfaction of appellant's debt is inconsistent with the court's finding that appellee acted in good faith. We think not.

Isolated from the record, the offer of appellee's president clearly supports an inference that appellee's actions were designed to compel appellant to satisfy his debt to appellee. However, when the offer is viewed against the evidence as a whole, conflicting inferences may be drawn. We are, of course, bound to draw only those inferences most favorable to the trial court's findings and decision.

We therefore may not disturb the trial court's finding that appellee was entitled to the benefit of the advice of counsel defense for the original charge of theft.

Appellant next challenges the court's finding of an absence of evidence that appellee commenced or caused to be commenced the amended affidavit for theft and the subsequent affidavit charging appellant with forgery.

Initially, we note that the amended theft affidavit was never filed. However, we need not determine the relevance of this fact. The amended affidavit was merely a more specific statement of charges arising from the investigative report upon which the original affidavit was based. Appellee was therefore entitled to the benefit of the defense of advice of counsel with respect to the amended affidavit.

As to the forgery affidavit, we are asked to reverse a negative finding of fact upon an element of appellant's action. We may do so only if the finding is clearly erroneous. Ind. Rules of Procedure, Trial Rule 52(A) and Appellate Rule 15(M). Further, since appellant seeks a reversal upon an issue to which he carried the burden of proof, we may reverse only if the evidence is uncontradicted

and will support no reasonable inference in favor of the finding. *Pepka* v. *Branch* (1973), 155 Ind. App. 637, 294 N.E.2d 141.

The basis of the forgery charge was a payroll check issued to appellant upon which appellant, without authorization, had affixed the signature of a person authorized to sign payroll checks.

Unlike the original affidavit charging theft, the affidavit for forgery was not signed and sworn to by any agent of appellee corporation. Rather, it was signed and sworn to by a deputy prosecuting attorney before the county prosecuting attorney. Appellee's president testified that he informed Andrews, the company's independent investigator, of the check and left the matter to him. However, since neither the investigator nor the prosecuting attorney testified at trial, there is no evidence of the manner and circumstances in which the information concerning the check was communicated to the latter.

In *Western Oil Refining Co.* v. *Glendenning* (1927), 90 Ind. App. 631, 156 N.E. 182, this court said:

"In *Ryan* v. *Orient Ins. Co.* (1922), 96 Vt. 291, 119 Atl. 423, it is stated that the decided cases which deal with questions of malicious prosecution generally are based upon an affidavit or complaint of a private individual, in which case the person making the affidavit is usually regarded as the prosecutor, and held liable as such. It must be observed that, in the instant case, the indictment was returned by a grand jury on an independent investigation made with the assistance of the prosecuting attorney. In the Ryan case, it is said that: 'It is of a public concern that a citizen having reason to believe, or even suspect, that a crime has been committed, be permitted to direct the attention of a prosecuting officer towards its investigation, without exposure to the peril of being held liable for malicious prosecution in case of a failure of conviction.' We adopt, without hesitation, this rule of law. It is further said in that case that: 'A defendant has not 'caused a prosecution' in the sense that renders him liable when he acts only in subordination to the prosecuting attorney and under the latter's directions; nor when he states the bare facts as to the plaintiff's conduct to such attorney, leaving him

to judge of the propriety of proceeding with the charge, where the attorney does not act in any way under the direction of the informant or the influence of the information thus received.' "

In the case at bar, the record reveals at most an inference that appellee in some manner communicated information to the prosecuting attorney which ultimately led or contributed to the filing of a charge of forgery. This inference alone could not sustain a finding that appellee 'caused the prosecution' in a sense which could result in liability in case of failure of conviction.

We must therefore conclude that the trial court did not err in finding that there was no evidence that appellee commenced or caused to be commenced the prosecution of appellant on the charge of forgery.

## II.

Appellant next asserts that he was entitled to judgment on his alternate claims of abuse of process and defamation of character. Appellee responds by contending (1) that he was not accorded notice of these alternate theories by appellant's complaint and (2) that these actions were barred by the statute of limitations.

Initially, we note that appellee is not entitled to rely on the defense of the statute of limitations since it was not specially pleaded as required by Ind. Rules of Procedure, Trial Rule 8(C). We must therefore examine appellant's complaint to determine whether it was sufficient to present the alternate claims asserted.

As our Supreme Court said in *State* v. *Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604:

"The rules do *not* require that the complaint state all the elements of a cause of action. It must be remembered that our new rules are based on so-called notice pleadings in which a plaintiff essentially need only plead the operative facts involved in the litigation. Other means less drastic than dismissal of the action can be used to clarify the theory

and basis for the cause of action. Among these are a Motion for a more definite statement under TR. 12(E), our very broad discovery rules, and the pre-trial conference under TR. 16(A)(1). We might note that certain cases from the Court of Appeals apparently state that the plaintiff is required to state in his complaint the theory upon which his claim is based. See, for instance, Cheathem v. City of Evansville (1972), [151] Ind. App. [181], 278 N.E.2d 602. Although a statement of the theory may be highly desirable, it is not required."

The torts of malicious prosecution and abuse of process are distinguished in Prosser on Torts § 121 (4th Ed. 1971) :

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance.

\* \* \*

"Thus if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process. But the two torts have the common element of an improper purpose in the use of legal process, and there are many cases in which they overlap and either will lie. . . ."

In our opinion, appellant's complaint is sufficient to give appellee notice of a claim grounded upon a theory of abuse of process. Paragraph 11 of the complaint specifically alleges the leveling of criminal charges for "ulterior and private motives and not in the interest of the enforcement of the criminal laws."

Likewise, we must conclude that appellant's complaint is sufficient to give appellee notice of a claim grounded on a theory of defamation of character. Paragraph 12 of the complaint alleges that while the criminal charges were pending, appellee spread false and malicious accounts thereof to prospective employers of appellant thereby causing him damage.

The court's general finding and judgment that Barrow take nothing on his complaint represents a negative judgment with respect to the theories of abuse of process and defamation of character. This judgment may not be attacked on the grounds that it is contrary to the evidence. Rather, appellant must demonstrate that the judgment is contrary to law. In determining whether a negative judgment is contrary to law, this court may neither weigh the evidence nor resolve questions of credibility of witnesses, but may consider only that evidence most favorable to the appellee together with all reasonable inferences deducible therefrom. The trial court's decision may be disturbed as being contrary to law only where the evidence leads to but one conclusion and the trial court has reached an opposite conclusion. *Link v. Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E.2d 126; *Dyer Construction Co.* v. *Ellas Construction Co.* (1972), 153 Ind. App. 304, 287 N.E.2d 262.

In our opinion, appellant has failed to demonstrate that the judgment is contrary to law. The arguments in appellant's brief rely mainly on evidence most favorable to appellant and are essentially directed toward questions of the sufficiency of the evidence. An examination of the record reveals conflicting evidence and inferences on essential elements of appellant's theories of abuse of process and malicious prosecution.

We therefore can not conclude that appellant was entitled to a judgment as a matter of law.

No reversible error having been demonstrated, the judgment of the trial court is hereby affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 316 N.E.2d 845.