LLOYD RUSSELL BENNETT *v.* STATE OF INDIANA

[No. 2-376A114. Filed November 30, 1977.]

*Harry Kremer, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Bennett appeals his jury conviction of theft of property valued in excess of $100.[1] His appeal presents two issues for review:

(1)  whether the trial court erred in denying his in-trial motion to suppress evidence, and;

(2)  whether he has twice been "put in jeopardy" in violation of the Fifth Amendment to the United States Constitution.

---

1.  I.C. 35-17-5-3 (Burns Code Ed. 1975) defines theft; I.C. 35-17-5-12 (Burns Code Ed. Supp. 1976) establishes varying penalties for theft.

For reasons stated below, the judgment is reversed.

## I.

Bennett first contends that the police stop of his vehicle and his arrest were not grounded upon sufficient probable cause and, therefore, the evidence seized as a result thereof should have been excluded.

The facts most favorable to the State establish that the victim of the crime, Mrs. Deborah Ogle, was describing (over the telephone) to her aunt, Ms. Jacqueline Trent, the property stolen from her home, when Bennett, who was Trent's son-in-law, entered the Trent home. As the conversation progressed, it became apparent to Trent that Bennett was wearing a ring which bore a striking resemblance to a stolen ring Ogle had previously described. Trent whispered into the phone that Bennett was wearing the stolen ring.

Ogle called the police and an officer was sent to her home. She related the conversation with her aunt, named Bennett as the alleged thief and gave a description of his car and the location of his residence. Trent's name, however, was not revealed. This information, along with a description of the stolen property, was relayed to Detective Buchanan, who in turn informed Officers Meek and Atwell and ordered them to investigate. Meek testified that, armed with this information, he and his partner arrived at the location specified by Ogle and observed a car matching her description leave the area. They followed a short distance and then stopped the car. The driver of the car, identified as Bennett, was asked for identification. At this point, Meek saw a ring on Bennett's hand which matched the description of the one stolen from Ogle's residence. Meek also observed, in plain view on the back seat, numerous other items which matched the description of the other items stolen from Ogle. These items were seized and Bennett was placed under arrest.

There can be no question that, if the initial stop of Bennett's car was justified, the stolen items were properly seized and Bennett arrested upon probable cause.[2] The test to be applied in determin-

---

2. The absence of probable cause to effectuate a formal arrest is not deter-

ing the constitutionality of an investigatory stop is whether the facts known to the police officer at the time of the stop would be sufficient to warrant a man of reasonable caution to believe that an investigation was appropriate. *Williams v. State* (1974), 261 Ind. 547, 307 N.E.2d 457, 459; *Luckett v. State* (1972), 259 Ind. 174, 284 N.E.2d 738, 742.

In the case at bar, Officers Meek and Atwell were in possession of admittedly hearsay information. Yet it carried sufficient indicia of reliability to justify an investigatory stop. The information was detailed and immediately verifiable at the scene. It cannot be said that the information came from one with a motive to falsify. The investigatory stop of Bennett's car, when measured in terms of "reasonableness," *Luckett, supra,* was an appropriate exercise of the officers' duties and, therefore, not constitutionally infirm. Thus, the trial court's denial of Bennett's motion to suppress evidence was proper.

## II.

Bennett next contends that he was twice "put in jeopardy" in violation of the double jeopardy provision of the Fifth Amendment.[3] The record reveals that Bennett had been charged with theft and, after trial to the court, was found guilty of theft of property valued at less than $100 (hereinafter, theft under $100). Thereafter, the trial court, on its own motion, granted a new trial because substantial portions of the transcript were not recorded due to an equipment malfunction and because the court reporter had retired and was unavailable to reproduce a transcript from her notes. Bennett was retried upon the same charge and convicted by jury of theft of property valued in excess of $100 (hereinafter, theft over $100). Bennett asserted for the first time in his Belated Motion to Correct Errors that the result of the second trial was barred by the double jeopardy clause of the Fifth Amendment.[4]

minative of the question of the reasonableness of an investigatory stop. *Lloyd v. State* (1975), 166 Ind. App. 248, 335 N.E.2d 232, 234.

3. The double jeopardy clause of the Fifth Amendment is applicable to the States through the due process clause of the Fourteenth Amendment. *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056.

4. We do not reach the issue whether Bennett may have waived his affir-

Bennett asserts error in the overruling of said motion, contending that the prior conviction of theft under $100 is an implied acquittal of the "greater" charge. Therefore, he argues, principles of double jeopardy barred his retrial and conviction for the "greater" offense.

The law is clear that where a defendant is tried and convicted of a lesser and included offense of the crime charged and a new trial is obtained, the defendant may be retried only upon the offense of which he was originally convicted. *Price v. Georgia* (1970), 398 U.S. 323, 90 S. Ct. 1757; *Causey v. State* (1971), 256 Ind. 19, 266 N.E.2d 795. This rule rests upon the proposition that a defendant convicted of a lesser and included offense has been impliedly acquitted of the greater offense. *See, e.g., United States v. Green* (1957), 355 U.S. 184, 78 S.Ct. 221. But whether an acquittal is express or implied, so long as the trier of fact is given a full opportunity to convict upon the greater charge, conviction of a lesser and included offense precludes further or later prosecution upon the greater offense. *Price v. Georgia, supra,* 398 U.S. at 328-329, 90 S.Ct. at 1761.

Thus, the fate of Bennett's claim of double jeopardy depends upon whether theft under $100 is a lesser and included offense of theft over $100. This appears to be a case of first impression, though the issue has been obliquely discussed in a few cases.[5]

mative defense of Double Jeopardy. The State has not asserted waiver nor has the issue been argued or briefed on appeal. We note, however, that "[a] finding of waiver requires an 'intentional relinquishment of a known right or privilege' [and] [w]e should particularly scrutinize a claim of waiver when it relates to a right as fundamental as that embodied in the constitutional protection against double jeopardy." *United States v. Anderson* (7th Cir. 1975) 514 F.2d 583, 586; *accord, DeMino v. New York* (1972), 404 U.S. 1035, 92 S.Ct. 720. We do not speculate whether the United States Supreme Court would now employ this same standard, but it is possible the issue may be treated differently, especially in view of the strict interpretation of the various states' contemporaneous objection rules. *See, e.g., Wainwright v. Sykes* (1977), ____ U.S. ____, 97 S.Ct. 2497.

5. Our Supreme Court has stated that while petit and grand larceny are no longer separate crimes, a distinction is made in the punishment upon conviction. *Willoughby v. State* (1969), 252 Ind. 13, 245 N.E.2d 167, 169. But *cf. Patton v. State* (1972), 257 Ind. 421, 275 N.E.2d 794 (implying that theft under $100 is a lesser and included offense of theft over $100); *accord, Presley v. State* (1972), 152 Ind. App. 637, 284 N.E.2d 526.

Prior to the 1963 Offenses Against Property Act (OAPA), I.C. 35-17-5-1 et seq. (Burns Code Ed. 1975), the significance of the value of the property stolen was reflected by the classification of the crime and the penalty imposed. Thus, if property exceeding $100 in value was stolen, the crime committed was grand larceny (one to ten years imprisonment); but if the property was valued at less than $100, the crime was petit larceny (one to five years imprisonment). Ind. Ann. Stat. §§ 10-3001, 10-3002 (Burns 1956), as amended by Acts 1959, Ch. 292, §§1 and 2. The courts were uniform in holding that petit larceny was a lesser and included offense of grand larceny and, therefore, where the defendant was charged with grand larceny, that charge embraced the crime of petit larceny. *Burnett v. State* (1954), 233 Ind. 651, 122 N.E.2d 468; *Hazlett v. State* (1951), 229 Ind. 577, 99 N.E.2d 743.

The OAPA consolidation of all theft crimes attempted to simplify the law of theft by defining the proscribed conduct in one statutory section and placing the penalty provisions, determined by the value of the property stolen, in a separate section. From this fact, the State contends that Bennett was convicted of the same crime, i.e., theft, at each trial. Citing dictum in *Barrow v. Weddle Bros. Construction* (1974), 161 Ind. App. 601, 316 N.E.2d 845, 851, the State urges that the value of the property does not affect the issue of Bennett's guilt or innocence, but only the penalty imposed.

Though the OAPA "consolidates" the several traditionally distinct crimes of theft under one general classification, we discern no legislative intent to change the substantive elements of the crimes formerly known as grand and petit larceny. Indeed, the purpose of the statutory revision was to overcome the *procedural* barriers to prosecution inherent in the common-law distinction between theft crimes. See I.C. 35-17-5-2 (Burns Code Ed. 1975). The retention of value as an indicia of legal culpability (and therefore punishment) precludes a judicial fusion of the offenses into one. Had the General Assembly intended to abolish the relationship between value and punishment, the penalty imposed for the proscribed conduct would no doubt have been the

same regardless of the value of the property stolen. Thus, it appears that the relationship between value and punishment reflects a legislative judgment which varies the degree of the culpability of one who engages in the criminal activity of theft.[6]

Even since enactment of the OAPA, the practice has apparently been to treat the offenses as separate and distinct, adhering to the former distinction between grand and petit larceny. For example, in the case at bar, the jury was instructed on both offenses.[7] Though this fact alone does not resolve the issue before us, it lends practical credence to a determination that the OAPA "crime" or "crimes" of theft have been treated much like the offenses of grand and petit larceny.

Accordingly, we hold that, for purposes of double jeopardy, theft under $100 is a lesser and included offense of theft over

6. I.C. 35-43-4-2 (Burns Code Ed. Supp. 1976), effective October 1, 1977 does, in fact abolish the distinction. Without regard to value, this provision punishes "theft" as a Class D felony pursuant to I.C. 35-50-2-7.

7. "Preliminary Instruction Number 5: To this charge the Defendant has entered a plea of NOT GUILTY; and the burden is upon the State of Indiana to prove to each juror beyond a reasonable doubt every material allegation of the crime(s) charged, or of any offense which is included within the crime(s) charged, before there may be a conviction. The following may be included under the crime(s) charged:

Count I—Theft of Property of the Value of Less than One Hundred Dollars ($100.00)

"The definitions and material elements of all crime(s) charged and included will be stated in other instructions.

\* \* \*

"Final Instruction Number 18: As stated in a previous instruction under Count I of the information filed in this case, the defendant may be found guilty of Theft of Property of the Value of One Hundred Dollars or More or of Theft of Property of the Value of Less than One Hundred Dollars or he may be found not guilty.

"If, under the law and the evidence, you shall find the defendant guilty and have reasonable doubt as to whether he is guilty of Theft of Property of the Value of One Hundred Dollars or More or Theft of Property of the Value of One Hundred Dollars or Less, you should find him guilty of the lesser offense, namely, Theft of Property of the Value of One Hundred Dollars or Less.

"If you shall determine that the defendant is not guilty of either offense charged in or covered by the information, then he should be found Not Guilty.

"You will be furnished with verdict forms as to each offense. You will return only one verdict form, as to Count One."

$100. Thus, principles of double jeopardy, theory, and logic, as well as the apparent practice of trial courts, lead us to conclude that the conviction of theft under $100 at the first trial precludes a later determination that the stolen property was worth more than $100.[8] Therefore, Bennett has twice been put in jeopardy in violation of the Fifth Amendment and the judgment must be reversed. *Price v. Georgia, supra; Causey v. State, supra.*

Bennett asserts that the conviction must be reversed and a new trial ordered. We are not unmindful of those cases where such relief was deemed appropriate.[9] However, Bennett does not dispute the sufficiency of the evidence to sustain his conviction, nor does he contend that the evidence adduced at a third trial would be any different than that in the record presently before us. Had error occurred such that Bennett was deprived of a fair trial, he would, of course, be entitled to a new trial. But prejudicial error in this respect is not alleged nor is it apparent from a review of the record. Under these circumstances, we are disinclined to order yet another trial.

Therefore, pursuant to our interpretation of *Ritchie v. State* (1963), 243 Ind. 614, 189 N.E.2d 575, in conjunction with Ind. Rules of Procedure, Appellate Rule 15(N), we reverse and remand to the trial court with instructions to vacate the judgment and sentence as to the offense of theft of property valued in excess of $100, to enter judgment upon the necessarily lesser and included verdict of guilt for the offense of theft of property valued at less than $100, and to impose sentence accordingly.[10]

---

8. Although we do not rest our decision on this ground, it should be noted that principles of collateral estoppel are embodied in the Fifth Amendment guarantee against double jeopardy. Thus, its applicability is a matter of constitutional fact, which requires the reviewing court to examine the entire record to determine whether the issue of fact was necessarily decided and essential to a verdict entered in a prior trial. *Ashe v. Swenson* (1970), 397 U.S. 436, 90 S.Ct. 1189; *see also*, Annot., 9 A.L.R.3d 203 (1966).

9. *See, e.g., Booker v. Phillips* (10th Cir. 1969) 418 F.2d 424, cert. den. 399 U.S. 910, 90 S.Ct. 2194 (1970).

10. *See Dickens v. State* (1973), 260 Ind. 284, 295 N.E.2d 613. *See also People v. Graham* (1975), 36 N.Y.2d 633, 331 N.E.2d 673.

Garrard, J., (participating by designation) and

White, J., concur.

NOTE—Reported at 369 N.E.2d 949.