PEOPLES BANK & TRUST CO.,
Defendant-Appellant,

v.

Sonja K. STOCK, Plaintiff-Appellee.

No. 1–279A52.

Court of Appeals of Indiana,
First District.

July 31, 1979.

Rehearing Denied Sept. 7, 1979.

Seymour M. Bagal, Jon R. Pactor, Indianapolis; George J. Lewis, Greenfield, for defendant-appellant.

David W. Foley, Indianapolis, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Peoples Bank & Trust Company (Peoples) challenges the judgment entered by the Hancock Circuit Court awarding plaintiff-appellee Sonja K. Stock (Stock) $75,000 in her action for malicious prosecution.

We affirm.

## FACTS

Michael Canada died November 28, 1974. For more than a year immediately preceding his death, Canada had dated and sometimes shared an apartment with Sonja Stock. Through his place of employment Canada held a policy of life insurance with Metropolitan Life Insurance Company. On May 29, 1974, Canada named "Sonja K. Stock, Fiancee" as beneficiary. On July 31, 1974, Canada named "Sonja K. Canada, Wife" as beneficiary.

After Canada's death, Attorney Arthur E. Ecklund, who had represented Canada's former wife in the proceeding for the dissolution of their marriage, went to Peoples and requested that Peoples serve as personal representative of Canada's estate. Canada's estate consisted of assets with a total value of $1,258.31. On December 13, 1974, a petition for issuance of letters of administration was filed by Virginia A. Canada (Canada's former wife), as natural guardian of Michael Canada's two minor children. Peoples was appointed personal representative, and Arthur E. Ecklund was named as counsel for the personal representative.

On January 17, 1975, Peoples, as personal representative of Michael Canada's estate, brought suit against Metropolitan Life Insurance Company and Stock. In the complaint Peoples sought a restraining order to prevent Metropolitan from paying the proceeds of Canada's life insurance policy to "an imposter alleging to be Sonja K. Canada—Wife" prior to the holding of a hearing. In Count II Peoples alleged, *inter alia*:

"4. That the Defendant, Sonja K. Stock, is wrongfully alleging and holding herself out to be one Sonja K. Canada, when in fact she is not.

5. That the Defendant, Sonja K. Stock, is not the designated beneficiary of the above mentioned policy.

6. That the Defendant, Sonja K. Stock, has no insurable interest in said policy or the proceeds thereof."

After hearing evidence the Marion Circuit Court entered its judgment on April 18, 1975:

"WHEREFORE, IT IS ORDERED, DECREED AND ADJUDGED that the court finds against plaintiff on its complaint, and the court finds that defendant Sonja K. Stock a/k/a Canada is the beneficiary in the above described group life insurance and that she is entitled to judgment in the sum of $11,500.00. The Marion County Clerk is ordered to pay Sonja K. Stock a/k/a Canada the sum of $11,500.00 to satisfy the judgment."

On July 2, 1975, Michael Canada's estate was closed. All assets had been consumed by court costs and fees of the personal representative and its attorney.

Sonja Stock brought suit against Peoples on August 19, 1975, charging that Peoples had filed its lawsuit against her maliciously and without probable cause. Although the trial court initially permitted Peoples to file a third party complaint against Ecklund, the trial court subsequently granted Stock's motion to strike the third party complaint. A jury returned a verdict in favor of Stock and awarded damages of $75,000. The Hancock Circuit Court entered judgment accordingly.

## ISSUES

1. Did Stock fail to meet her burden of proving Peoples' lack of probable cause?

2. Did Peoples prove its defense of reliance on advice of counsel?

3. Did Stock fail to prove Peoples' malice?

4. Did Stock fail to prove that Peoples had instituted an action against her?

5. Was Stock's action for malicious prosecution barred by Peoples' discharge as personal representative of Canada's estate?

6. Did Stock fail to plead and prove damages?

7. Were punitive damages appropriate in this case ?

8. Did the jury award excessive damages?

9. Did the trial court err in granting Stock's motion to strike Peoples' third party complaint?

10. Was Stock's action for malicious prosecution barred because she failed to file a claim in Canada's estate?

11.–16. Did the trial court err in giving and refusing certain instructions?

## DISCUSSION AND DECISION

The elements of an action for malicious prosecution are listed in *Barrow v. Weddle Brothers Construction*, (1974) 161 Ind.App. 601, 605, 316 N.E.2d 845, 849:

"In an action for malicious prosecution, the plaintiff must prove (1) that the defendant instituted or caused to be instituted a prosecution, (2) that the defendant acted with malice, (3) that there was a want of probable cause for instituting the prosecution, and (4) that the prosecution was terminated in the plaintiff's favor. . . ." (Citations omitted)

*Issues One and Two*

Peoples maintains that (a) Stock failed to meet her burden of proving Peoples' lack of probable cause for instituting its action against her, and (b) Peoples proved its defense of reliance on advice of counsel.[1]

In *Indianapolis Traction & Terminal Co. v. Henby*, (1912) 178 Ind. 239, 248, 97 N.E. 313, 317, the Supreme Court offered this guidance:

"In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon is controverted. In such case the court must hypothetically state to the jury the material facts which the evidence tends to prove, and positively direct, as to the law, on the assumed state of facts. Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause. . . ." (Citation omitted)

In the case of *Treloar v. Harris*, (1917) 66 Ind.App. 59, 71–72, 117 N.E. 975, 979, Harris sued Treloar for malicious prosecution after Treloar had unsuccessfully brought an action to have Harris declared insane. At trial the court had given the following instruction:

". . . 'Probable cause' is that apparent state of facts found to exist upon reasonable inquiry; that is, such inquiry as the given case renders convenient and proper, which would induce a reasonable, intelligent, and prudent man to believe the person against whom the charge is preferred or action brought or filed is insane or of unsound mind, and *if defendant brought an action against plaintiff maliciously* in the court of James S. Keigwin, charging plaintiff with being insane, *without making the inquiry that a prudent, cautious person would make under like circumstances, then and in that case, as a matter of law, the bringing of the action, or, in other words the prosecution was instituted without probable cause.*" (Our emphasis)

When Treloar challenged the instruction on appeal, the Appellate Court responded:

"It is insisted that this instruction is erroneous, in that it told the jury that if appellant did not make the inquiry that a

---

1. A person who raises an affirmative defense has the burden of proving that defense. Ind.Rules of Procedure, Trial Rule 8(C).

prudent cautious person would make under like circumstances, there was no probable cause for the prosecution of the original proceeding against appellee. The cases of *Lacy v. Mitchell* [(1864)], 23 Ind. 67, and *Hutchinson v. Wenzel* [(1900)], 155 Ind. 54, 56 N.E. 845, cited by appellant, lend no support to this objection, but on the contrary, impliedly at least, recognize that substantially the inquiry indicated in the instruction is an essential of probable cause. The inquiry essential in such cases is that which the given case renders convenient and proper, and which a man of prudence and caution would make under like circumstances. . ."

The defense of reliance on advice of counsel is explained in the context of an action for malicious prosecution resulting from a criminal prosecution in *Indianapolis Traction & Terminal Co. v. Henby, supra,* at pages 248–49 of 178 Ind., at page 317 of 97 N.E., but the explanation has validity also in a suit based upon a civil proceeding:

"Where, before the commencement of the prosecution, the prosecutor honestly and in good faith sought advice of reputable counsel, and made to such counsel a full and true statement of all the material facts within his knowledge, and such counsel thereupon advised the prosecutor that the facts so stated warranted the prosecution, and, relying on the advice, the prosecutor in good faith commenced the action, such facts constitute probable cause, and consequently a complete defense against an action for malicious prosecution, although the advice given was erroneous. . . ." (Citations omitted)

In 52 Am.Jur.2d *Malicious Prosecution* § 80 (1970) appears reference to a limitation upon the defense:

"The attorney must have been impartial, without prejudice or bias, and disinterested in order for his advice to serve as a defense to an action for malicious prosecution. There cannot be justifiable reliance on the opinion of an attorney who had an interest of his own to protect by the proceeding, or who was prejudiced against the person proceeded against." (Footnotes omitted)

The same principle is expressed in this manner in 54 C.J.S. *Malicious Prosecution* § 48a (1948):

"The advice of counsel to avail as a defense must have been given by a competent, disinterested, regularly admitted and practicing attorney and counselor at law in good standing who is not the defendant himself. . . ." (Footnotes omitted)

The Appellate Court of Illinois had occasion to consider the meaning of the word "disinterested" in *Schipper & Block, Inc. v. Carson Pirie Scott & Co.,* (1970) 122 Ill. App.2d 34, 256 N.E.2d 854, 857:

"Disinterested is defined as: 'Not having any interest in the matter referred to or in controversy; free from prejudice or partiality; impartial or fair minded; without pecuniary interest; not previously interested; not biased or prejudiced.' 27 C.J.S. Disinterested, p. 314. The term 'disinterested' does not simply mean a lack of pecuniary interest but it requires the appraiser to be one not biased or prejudiced. 12A Words and Phrases, Disinterested, p. 423.

Bias and prejudice are conditions of the mind. *City of Naperville v. Wehrle,* 340 Ill. 579, 173 N.E. 165, 71 A.L.R. 535; *In re Adoption of Richardson,* 251 Cal.App.2d 222, 59 Cal.Rptr. 323. Although the terms are often used interchangeably or together to indicate a single state of mind, they are not exactly synonymous. *Littrell v. State,* 22 Okl.Cr. 1, 209 P. 184, 186. 'Bias' in its legal acceptation, means only a leaning toward one of the parties rather than the other; and 'prejudice' imports the formation of a fixed anticipatory judgment as contradistinguished from those opinions which may yield to evidence. 'Prejudice' means a prejudging of a case from any cause. It means a settled or fixed opinion. 33 Words and Phrases, Prejudice, p. 312."

The evidence most favorable to the judgment reveals that Peoples had no knowledge concerning Michael Canada or his es-

tate prior to the time that Ecklund requested Peoples' services as personal representative of Canada's estate. Ecklund related to Peoples his version of the facts and his interpretation of the relevant law. Peoples made no independent investigation of the facts. Peoples understood that the estate was being opened solely for the purpose of litigation. Ecklund informed Peoples that Ecklund had represented Canada's former wife in the dissolution of marriage action and subsequent proceedings against Michael Canada for enforcement of support obligations. Peoples understood the relationship between Sonja Stock and Michael Canada and was aware of the May beneficiary designation as well as the July beneficiary designation. Ecklund explained to Peoples that he (Ecklund) thought the children of Michael Canada, rather than the woman with whom Canada had been living, "deserved" the insurance money.

Peoples thereupon accepted the position as personal representative of Michael Canada's estate. peoples then employed Ecklund as its attorney. Acting upon the advice of Ecklund, and without reading the provisions of the insurance policy, Peoples filed its action against Sonja Stock and the insurance company.

This set of facts bears no resemblance to the situation in which a layman makes a full disclosure of facts within his knowledge and then acts upon the advice of disinterested counsel. Ecklund is the person who came to Peoples with the facts, with his interpretation of the law, and with his determination that Canada's children deserved the proceeds from the insurance policy and the woman with whom Canada had been living did not deserve the proceeds. Peoples became personal representative. To whom did Peoples then look for advice? Peoples employed Ecklund as its counsel and relied upon his investigation of the facts and his investigation of the law.

■ We cannot hold that Peoples made the inquiry that a prudent, cautious person would make under like circumstances. Neither can we hold as a matter of law that Peoples should have prevailed with its defense of reliance on the advice of counsel.[2]

*Issue Three*

Peoples contends that Stock failed to prove Peoples' malice. Its argument is exemplified in the following paragraph from its brief filed on appeal:

> "Both Ecklund and Sonja testified that they hardly knew each other. Sonja testified that she hardly knew that Peoples existed. The bank cashed a check for her once. That was the extent of their dealings. It is difficult to understand how one could have malice toward another who is virtually non-existent."

In *Pontius v. Kimble*, (1914) 56 Ind.App. 144, 145–46, 104 N.E. 981, 981–82, an action for malicious prosecution, the Appellate Court approved an instruction which included the following explanation:

> " ' . . . In the legal sense, any wrongful act done wilfully and purposely, and without just cause or excuse, to the injury of another, is, as against that person, malicious; and *malice, in the sense of the law, does not presuppose personal hatred or revenge, but may be implied under certain circumstances from a total want of probable cause, or from gross or culpable omission to make suitable and reasonable inquiry*, and both want of probable cause and malice must be shown to exist to entitle plaintiff to recover. Malice is a question of fact for the jury, who may infer it from a want of probable cause, though they are not bound to do so.' " (Our emphasis)

■ As stated above, malice is a question of fact for the jury. The jury heard evidence from which it could have found that Peoples failed to make suitable and reasonable inquiry.

---

**2.** Stock has noted that this affirmative defense was not explained in the instructions read to the jury. Peoples, of course, had the duty to assure the reading of an instruction explaining its affirmative defense.

*Issue Four*

Peoples argues that Stock failed to prove that Peoples instituted a prosecution against her.

Peoples maintains throughout its appellate brief that the suit it filed against Stock was simply an action for declaratory judgment and that such an action is not a prosecution which can serve as the basis for a suit charging malicious prosecution. Peoples asserts that "[t]he only issue involved in Peoples' suit for declaratory judgment was one which was a pure question of law—the legal validity or invalidity of the designation 'Sonja K. Canada—Wife.'"

In *Treloar v. Harris, supra,* 66 Ind.App. 59, 67–68, 117 N.E. 975, 978, Judge Hottel wrote on behalf of the Appellate Court:

"The gist of the action for malicious prosecution is that the 'plaintiff has improperly been made the subject of legal process to his damage.' . . . The essential elements for such an action is a malicious prosecution of some legal proceeding without probable cause, before some judicial officer or tribunal. The scandal or the humiliation, vexation, and expense resulting to the person thus wrongfully prosecuted, furnishes the ground upon which an action for malicious prosecution will lie. . . .

A general definition of a 'judicial proceeding' is as follows: 'Judicial proceeding means any proceeding for the purpose of obtaining such remedy as the law allows.' . . . A more specific definition appears in the case of *Martin et al. v. Simpkins et al.* [(1894)], 20 Colo. 438, 444, 38 P. 1092, 1094, and is as follows: 'This much, however, may be safely said: . . When a regularly constituted court of justice is clothed with authority to hear and determine a question of fact or a mixed question of law or fact, upon evidence, written or oral, to be produced before such court, and thereupon to render a decision affecting the material rights or interests of one or more persons or bodies corporate, such proceeding by the court must be regarded as judicial, and the decision by the court may proper-

ly be denominated a judgment.'" (Citations omitted)

In the complaint filed by Peoples against Stock, Peoples alleged, *inter alia*:

"4. That the Defendant, Sonja K. Stock, is wrongfully alleging and holding herself out to be one Sonja K. Canada, when in fact she is not."

Peoples also asked that the insurance company be restrained because "the Defendant Metropolitan Life Insurance Company might extend payment to an imposter alleging to be Sonja K. Canada—Wife."

Nowhere in its complaint did Peoples request a declaration of rights on a "pure question of law." Instead, Peoples made its allegations against Stock and then prayed "that judgment be rendered in favor of the Plaintiff and against the Defendant Sonja K. Stock, with reference to the payment of the insurance proceeds and for all other relief proper in the premises."

■ By its complaint Peoples imposed upon Stock the obligation not simply to litigate the legal question of the validity of the beneficiary designation but also to defend against allegations that she was an imposter and that she was wrongfully holding herself out to be Sonja K. Canada. Evidence demonstrated the humiliation, vexation, and expense which Peoples caused Stock with its lawsuit. The trial court in that cause did in fact render a decision affecting the material rights or interests of the parties.

Although Peoples could have brought an action raising a "pure question of law," the record does not support its contention that it did so.

*Issue Five*

■ Peoples contends that Stock's action for malicious prosecution was barred by Peoples' discharge as personal representative of Canada's estate. Peoples relies upon IC 1971, 29-1-17-13 (Burns Code Ed.):

"Upon the filing of a supplemental report of distribution together with receipts or other evidence satisfactory to the court that distribution has been made as ordered in the final decree, the court shall

enter an order of discharge. The discharge so obtained shall operate as a release from the duties of personal representative and shall operate as a bar to any suit including suits by persons under disability, against the personal representative and his sureties except suits which are commenced within one (1) year from the date of the discharge and are based solely upon alleged mistake, fraud or wilful misconduct on the part of the personal representative. . . ."

In *McGahan v. National Bank of Logansport*, (1972) 151 Ind.App. 658, 661, 281 N.E.2d 522, 524, Judge Sharp explained: " . . . *An order of final settlement of an estate* possesses the elements of a final judgment and, as such, *is conclusive on interested persons* until set aside by an appeal or a proceeding brought for that purpose. . . ." (Citation omitted) At IC 1971, 29–1–1–3 (Burns Code Ed., Supp. 1978) appears this definition:

" 'Interested persons' means heirs, devisees, spouses, creditors or any others having a property right in or claim against the state [sic] of a decedent being administered. This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved." (Our insertion)

Stock had no property right in or claim against the estate of Michael Canada. She sought no recovery from the estate; her claim was against Peoples.

In *Ostheimer v. McNutt*, (1946) 116 Ind. App. 649, 652, 66 N.E.2d 142, 143, Judge Crumpacker wrote:

" . . . it is the general rule that an estate cannot be held liable for a tort committed by the trustee, executor, or administrator thereof. . . . When such representative 'commits a tort he steps out of the line of his duty; in other words, in so far [sic] as he commits a wrong, he does not represent the estate, and therefore it should not be held liable.' Note 44 A.L.R. 639. . . ." (Citations omitted; our insertion)

IC 29–1–17–13 obviously addresses those situations in which the personal representative incurs liability in its capacity as personal representative. In committing a tort, Peoples stepped out of the line of its duty. Stock's action for malicious prosecution was not barred by IC 29–1–17–13.

*Issue Six*

■ Peoples asserts that Stock failed to plead and prove damages.

Peoples does not allege that it objected to the introduction of evidence proving special damages. We quote from Judge White's opinion in *Indianapolis Transit System, Inc. v. Williams*, (1971) 148 Ind.App. 649, 658–59, 269 N.E.2d 543, 550:

" . . . when the trial has ended without objection as to the course it took, the evidence then controls. Neither pleadings, pre-trial orders, or 'theories' postulated by either party should then operate to frustrate the trier of fact in finding the facts which that evidence (including all reasonable inferences the trier may draw therefrom) convinces him (whether he be a judge or juror), by a preponderance thereof, is true or block him from awarding the relief, if any, which the rules of substantive law say those facts merit." (Footnote omitted)

See also Ind.Rules of Procedure, Trial Rule 15; *Yeager & Sullivan, Inc. v. O'Neill*, (1975) 163 Ind.App. 466, 324 N.E.2d 846.

In her complaint Stock alleged that she had incurred the expense of attorney fees in defending against Peoples' action and had suffered emotional distress and humiliation.

We deem it unnecessary to relate the evidence in detail. It is sufficient to say that the jury heard evidence supporting a conclusion that Peoples' lawsuit caused Stock considerable mental anguish as well as humiliation and embarrassment. While Peoples might have litigated a question of law, it chose in its complaint to include aspersions against Stock which she was forced to answer in the courtroom by revealing matters of the most personal nature. Additionally, Stock proved that she had incurred the expense of attorney fees in

the amount of $3,800.[3] Stock did not fail in her burden of proving damages.

*Issue Seven*

Peoples argues that punitive damages were not appropriate in this case because any actual malice was that of Ecklund and not of Peoples, and because the award of punitive damages would not advance public policy.

■ Peoples bases its entire argument upon the evidence most favorable to Peoples. This court must look to the evidence which supports the judgment. *Barrow v. Weddle Brothers Construction, supra.*

■ Peoples permitted the issue of punitive damages to go to the jury without objection. Having reviewed the evidence, we cannot hold that punitive damages were impermissible as a matter of law. See Issue Eight also.

*Issue Eight*

Peoples argues that the damages awarded in the amount of $75,000 are excessive.

In *Snider v. Lewis*, (1971) 150 Ind.App. 30, 52–53, 276 N.E.2d 160, 174, a malicious prosecution action based upon a civil suit, this court had occasion to discuss and quote from *Dwyer v. McClean*, (1962) 133 Ind. App. 454, 175 N.E.2d 50:

> "In the *Dwyer* case the court further said:
>
> > 'In an action for malicious prosecution the plaintiff may recover all damages which are the natural probable consequences of the malicious prosecution complained of. The plaintiff, if entitled to damages, may thus recover as compensatory damages the pecuniary loss which results directly from such prosecution. He may also recover as exemplary and punitive damages for the non-pecuniary losses if any have

been sustained. Within this second class of damages are included the injuries to the plaintiff's reputation, since an accusation of a crime made under the pretense of bringing a person guilty of such crime before the bar of justice is made in an imposing and impressive manner and the reputation of the party so accused may have inflicted upon it a deeper and longer lasting injury than would be inflicted thereon if the same charges were uttered under other circumstances. Consideration can also be given in awarding such damages to the humiliation, embarrassment, mental suffering, physical pain, discomfort and inconveience [sic] caused by such prosecution if the same are shown to be the direct and proximate results of the defendant's action. * * *'

The court, further, in speaking of setting aside the verdict on the grounds of excessiveness, stated that the rule in Indiana is as follows:

> 'Courts seldom disturb verdicts on the ground that compensation for an injury to character has been estimated by too high a standard. In cases of this character a new trial will not be granted on the ground of excessive damages, unless they are so outrageous as to induce the belief that the jury acted from prejudice, partiality or corruption. *Guard v. Risk*, 11 Ind. 156; *Alexander v. Thomas*, 25 Ind. 268; *Crocker v. Hadley*, 102 Ind. 416, 1 N.E. 734.
>
> 'An action for malicious prosecution, like actions for libel or slander, involves the question of compensation for an injury to character. We can not disturb the verdict on that ground.' [The] *Evansville and Terre Haute Railroad Company, et al. v. Talbot* (1891), 131 Ind. 221, 223, 29 N.E. 1134.'

\* \* \* \* \* \*

---

3. On January 16, 1975, Stock retained an attorney to assist her in her efforts to collect the insurance policy proceeds from Metropolitan. Peoples contends that the amount of attorney fees for Stock's defense should not be recoverable from Peoples because she gained the insurance proceeds as a result of the suit filed by Peoples and she had previously contracted to bear the expense of attorney fees incurred for that purpose. We are not persuaded that this sequence of events should inure to Peoples' benefit. No rule prevents a person from seeking the advice of counsel concerning a dispute prior to the date that the dispute reaches the stage of litigation.

The court, speaking further, said, 133 Ind.App. at page 460; 175 N.E.2d at page 53:

'The elements which the jury or the trial court may consider in assessing the amount of punitive damages do not admit of any strict and specific proof, and we can foresee situations in criminal prosecutions where if the punitive damages were to be tied to such a proportionate rule grave injustices would be done. The measure of a man's character and reputation can hardly be measured by the amount of money he may have been required to expend in defending himself against such criminal action. * * * * '" (Our insertion)

▪ Having carefully reviewed the evidence, we cannot hold as a matter of law that the damages awarded Stock are excessive.

*Issue Nine*

Peoples contends that the trial court erred when it granted Stock's motion to strike Peoples' third party complaint filed against Ecklund. In its third party complaint, Peoples alleged:

"4. Any recovery of a judgment by the plaintiff against the defendant-third party plaintiff for malicious prosecution as alleged in the amended complaint, would have been caused by the actions of the third party defendant who rendered professional legal advice to and upon which the defendant-third party plaintiff relied."

▪ The trial court determined that Peoples was charging Ecklund with professional malpractice in its third party complaint. Judge Davis expressed his opinion that "because of the nature of the issues which such third party proceeding would

inject into this case, confusion and delay would result." We are not persuaded that the trial court abused its discretion in granting Stock's motion to strike.[4] See *City of Elkhart v. Middleton,* (1976) 265. Ind. 514, 356 N.E.2d 207.

*Issue Ten*

Peoples argues that Stock's suit for malicious prosecution was barred because she failed to file a claim in Canada's estate.

▪ Stock had no claim against the estate of Michael Canada. *Isbell v. Heiny,* (1941) 218 Ind. 579, 33 N.E.2d 106; *Ostheimer v. McNutt, supra.* It was neither necessary nor appropriate for her to file a claim in Canada's estate before bringing her action for malicious prosecution.

*Issue Eleven*

Peoples maintains that the trial court erred when it refused to give Peoples' Instruction No. 2. This instruction directed the jury to find in favor of Peoples if it found "that the prior legal proceeding was not 'against' the plaintiff, but was brought to obtain a declaration from a court as to the ownership in proceeds to a certain life insurance policy."

▪ The trial court does not err in refusing to read a tendered instruction when its subject matter is adequately covered by other instructions given. *Frankfort v. Owens,* (1976) Ind.App. 358 N.E.2d 184.

▪ The trial court gave its own Instruction No. 5 which informed the jury that it could not find in favor of Stock unless Stock proved that Peoples had unsuccessfully brought a legal proceeding against Stock with malice and without probable cause and with damages resulting to Stock.

---

**4.** Peoples has devoted most of its argument to assertions that Peoples did state a valid claim against Ecklund in its third party complaint. Justice Prentice explained in *City of Elkhart v. Middleton,* (1976) 265 Ind. 514, 356 N.E.2d 207, 212:

"Impleader is basically a procedural device of expedience, but since certain circumstances cause it to fail in its purpose; i. e., when the addition of a party could contribute more problems than it would eliminate or alleviate, it is clear that a party cannot have his third-party claims adjudicated in the same action as of right. . . . ."

The jury was adequately instructed on the subject.[5]

### Issue Twelve

Peoples argues that the trial court erred in refusing to read Peoples' Instruction No. 5. This instruction presented Peoples' theory that Stock's action was barred by IC 29–1–17–13. Because the instruction was erroneous, the trial court properly refused it. See Issue Five, *supra.*

### Issue Thirteen

■ Peoples maintains that the trial court erred in giving Stock's Instruction No. 1 and rejecting Peoples' Instruction No. 10.

Peoples alleges that Stock's Instruction No. 1 created an inference that no judicial procedure was available for changing one's name. The instruction does not so state, and we detect no such inference. The jury was simply instructed that in Indiana a person may assume any name without benefit of legal proceedings. It does not imply that it would have been impossible to formally change one's name by use of judicial proceedings.

Peoples' objection to Stock's instruction amounts to an assertion that the instruction is incomplete. In *Price v. Huddleston,* (1906) 167 Ind. 536, 542, 79 N.E. 496, 499, our Supreme Court explained:

"... This court has held many times that where an instruction is good as far as it goes, it will not be adjudged erroneous because it does not cover the subject as fully as it might have done. In such cases if the complaining party had desired a more specific and elaborate instruction on the particular subject, he should have prepared one, and, at the proper time, requested the court to give it to the jury."

Peoples asked that its Instruction No. 10 be read instead of Stock's Instruction No. 1. The trial court had previously denied Peoples' request to tender more than ten instructions. Although Peoples' instruction on the subject of changing one's name is numbered ten, it was submitted with the second request for instructions and was in excess of the number of instructions permitted by the trial court. See Ind.Rules of Procedure, Trial Rule 51(D). The trial court did not err.

### Issue Fourteen

Peoples alleges that the trial court erred in reading Stock's Instruction No. 2 and in refusing Peoples' Instruction No. 11.

■ Peoples argues that Stock's Instruction No. 2 is an erroneous statement of the law. Any error is waived because Peoples has cited no authority whatsoever in support of its argument. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

Peoples also suggested by a portion of its objection that Stock's instruction is incomplete. Although Peoples tendered a more complete instruction as its Instruction No. 11, its instruction on the subject exceeded the number of tendered instructions permitted by the trial court. Peoples has not demonstrated error.

### Issue Fifteen

Peoples argues that the trial court erred in giving Stock's Instruction No. 4.

Any error is waived because Peoples has failed to cite authority in support of its argument. AP 8.3(A)(7).

■ This instruction referred to a duty to make reasonable inquiry to ascertain whether probable cause exists before commencing an action. In its objection Peoples argued that the instruction was erroneous because "one may not need to make any inquiry if all relevant facts were known or if a reasonable inquiry would be futile. Or one's inquiry might be consultation with his attorney." The instruction included the following statement: "The necessary inquiry is that inquiry that a man of prudence and caution would make *under like circumstanc-*

---

5. Peoples' Instruction No. 3 also directed the jury's attention to Peoples' motive in filing its complaint.

es." (Our emphasis) Peoples would not prevail on the merits.[6]

*Issue Sixteen*

Peoples maintains that the trial court erred in giving Stock's Instruction No. 8.

Any error is waived because Peoples has failed to cite authority in support of its argument. AP 8.3(A)(7).

Peoples would not prevail on the merits. It contends that the instruction is erroneous because

(a) The instruction "assumes the presence of damages." To the contrary, the instruction provides: "You are to determine whether these elements of damages have been proved by consideration of the evidence relating to damages. Your verdict must be based on that evidence and not on guess or speculation."

(b) It informed the jury that it could award Stock damages for injury to reputation, character, embarrassment, humiliation, and mental anguish whether or not those injuries were caused by Peoples. To the contrary, the instruction refers to "those elements of damage which have been proved by the evidence to have resulted from the wrongful conduct of the defendant."

Finally, Peoples asserts that the instruction listed elements of damages for which no evidence had been introduced at trial. Peoples made no such objection at trial, however, and thereby waived any error. *Scott v. Krueger*, (1972) 151 Ind.App. 479, 280 N.E.2d 336.

Judgment affirmed.

LYBROOK and ROBERTSON, JJ., concur.

**6.** See *Treloar v. Harris*, (1917) 66 Ind.App. 59, 117 N.E. 975.