Andrew Currin **PALMER**,
**Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 2–480A86.**

Court of Appeals of Indiana,
First District.

Oct. 22, 1980.

Rehearing Denied Nov. 25, 1980.

Harriette Bailey Conn, Public Defender, Kurt A. Young, David P. Freund, Deputy Public Defenders, Indianapolis, for defendant–appellant.

Theodore L. Sendak, Atty. Gen., John K. Silk, Deputy Atty. Gen., Indianapolis, for plaintiff–appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Andrew C. Palmer appeals from a jury conviction of robbery while armed with a deadly weapon, a class B felony,[1] and the sentence of eight (8) years entered thereon. We affirm.

## FACTS

Palmer robbed the Village Pantry near Elston Lanes in Lafayette, Indiana, on November 9, 1978, at approximately 11:00 p. m. He entered the store, walked around, then went back to the door and looked out before proceeding to the cash register where he laid a sack and gun on the counter and told the clerk, Randi Briscoe, to put all of the money she had in the sack, "especially the twenties." Briscoe testified Palmer appeared to be nervous, repeatedly looked at the door, and told her to hurry. Palmer took the sack before Briscoe put in the pennies and nickles and left the store, but he returned to tell Briscoe to lift up the change drawer to look for more twenties. Briscoe testified that Palmer was neatly dressed and visibly nervous but did not seem to be behaving abnormally. Shortly thereafter Palmer was apprehended by Officer France of the Tippecanoe County Sheriff's Department who testified that although Palmer appeared frightened, he did not exhibit any abnormal behavior. Officer France also testified that he had the opportunity to observe Palmer's behavior during

---

1. Ind.Code 35–42–5–1:

    "A person who knowingly or intentionally takes property from the presence of another person:
    (1) by using or threatening the use of force on any person; or
    (2) by putting any person in fear;

    commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon, and a Class A felony if it results in either bodily injury or serious bodily injury to any other person. *As added by Acts 1977, P.L. 340, Sec. 39.*"

the time Palmer was incarcerated at the jail and that Palmer was neither withdrawn nor did he exhibit any abnormal behavior. Two other officers of the Tippecanoe County Sheriff's Office offered testimony similar to France's regarding Palmer's normal behavior, neat appearance, and ability and willingness to follow instructions during apprehension and booking procedures. Officer Napier also of the Tippecanoe County Sheriff's Office testified that Palmer did not want to sign a written statement but that he had signed a waiver of rights form and consented to answer questions. Napier testified that during the interview Palmer described his activities of the evening as including beer drinking and "grass" smoking with friends. Palmer stated that he was on his way to visit his grandmother at the Westchester apartment complex near the Village Pantry; when he turned the corner at the intersection of Routes 25 and 43 a voice in his head told him to stop and rob the store. Palmer also told Napier that he had problems with drug flash–backs since he had used PCP and "acid" while in the Navy. Napier testified that Palmer appeared nervous and hesitant, as do most people who are interrogated, and in addition that when they began discussing Palmer's family and background, for no apparent reason, Palmer clenched his fists, became tense, closed his eyes, moved his head and lips, but would not respond to questions or anything else. At that point the interview was terminated. Other witnesses including Palmer and Palmer's wife testified to Palmer's behavioral changes in the three years prior to this incident and after Palmer had been exposed to drugs in the Navy. They also testified to his various efforts to seek psychiatric help in the past, his fear of developing mental illnesses similar to those of other members of his family, and his positive response to medical treatment while being held in jail. Two court appointed psychiatrists who had examined Palmer testified that they believed him to

be mentally ill at the time of the robbery. Another psychiatrist who was called by the state and had reviewed Palmer's medical records testified that in his opinion it was unlikely that a psychotic state such as Palmer's would result in behavior such as armed robbery. Palmer admitted that he committed the robbery but contended that he was not responsible by reason of insanity at the time of the act. The jury found him guilty as charged.

## ISSUES

Appellant alleges three errors for our review:

I. The trial court committed fundamental error in instructing the jury that appellant was required to prove his insanity by a preponderance of the evidence.

II. The court erred in refusing to give appellant's instruction number one.

III. The verdict of the jury is contrary to law.

## DISCUSSION AND DECISION

*Issue I*

■ The first issue appellant raises for review challenges the constitutionality of Indiana's insanity defense statute requiring appellant to prove insanity by a preponderance of the evidence.[2] Appellant's major premise is that Ind. Code 35 -41–4–1(b) denies his fundamental due process rights by shifting the burden of proof on the intent element of the crime of robbery with which he was charged. Because he feels that IC 35–41–4–1(b) itself is unconstitutional, he contends that the court's instruction number nine which is based on the statute must rise to the level of fundamental error, precluding his having a fair trial under any set of circumstances. Thus, appellant urges us not to consider his argument on this issue as having been waived for failure to object at trial to the court's instruction number nine. Although we find appellant's brief to be

---

2. Ind.Code 35–41–4–1: "(a) A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt.

"(b) Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (IC 35–41–3–6) by a preponderance of the evidence."

well reasoned, researched, and written, we respectfully disagree with his conclusions. We hold IC 35–41–4–1(b) to be constitutional and find no fundamental error in the court's instruction number nine.

The United States Supreme Court in *Leland v. Oregon*, (1952) 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, upheld the constitutionality of an Oregon statute requiring the defendant to prove insanity beyond a reasonable doubt. The Supreme Court reaffirmed its holding in *Leland* in *Patterson v. New York*, (1977) 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281. Other jurisdictions have likewise upheld the constitutionality of statutes requiring the defendant to prove his insanity by a preponderance of the evidence. *See*, 17 A.L.R.3d § ·11 (1968 and Supp.1980). We, therefore, reject appellant's contentions of constitutional infirmity in IC 35–41–4–1(b) which requires him to prove insanity by a preponderance of the evidence. Statute requiring defendant to prove insanity by preponderance of evidence did not deny defendant's fundamental due process rights and did not shift burden of proof on intent element."

▮ Likewise, we reject appellant's argument that allegations of error in instruction number nine rise to the level of fundamental error. Justice Hunter recently reminded us that not all alleged violations of a constitutional right become fundamental error.

"That the error complained of relates to the violation of a right guaranteed by the constitution does not, in and of itself, render it fundamental error requiring us to go against well established rules of procedure. Rather, fundamental error is error which, if not rectified, would deny the defendant 'fundamental due process.' *Malo v. State*, [(1977) 266 Ind. 157, 361 N.E.2d 1201]; *Webb v. State*, (1972) 259 Ind. 101, 284 N.E.2d 812."

*Crosson v. State*, (1980) Ind., 410 N.E.2d 1194. Because we hold IC 35–41–4·-1(b) to be constitutional, we do not consider any error alleged by appellant concerning instruction number nine as such fundamental error as would deny him fundamental due process under any set of circumstances.

Appellant's failure to object to instruction number nine at trial, therefore, must result in waiver of this issue as error for review. *Crosson v. State, supra; Pavone v. State*, (1980) Ind., 402 N.E.2d 976; *Womack v. State*, (1978) Ind., 382 N.E.2d 939.

*Issue II*

Appellant contends that the court erred in refusing to give his tendered instruction number one since it was a correct statement of the law, related to issues directly confronting the jury, and was not adequately covered by any instructions given by the court. We cannot agree.

▮ Appellant's tendered instruction number one distinguishing between "beyond a reasonable doubt" and "fair preponderance of the evidence" appears as follows:

"The distinction between 'beyond reasonable doubt' in a criminal case and a 'fair preponderance of the evidence' in a civil case has always been recognized in Indiana jurisprudence. The two are wholly different, clearly recognize distinguishable degrees of burdens of proof and, of course, the duty of establishing a fact 'beyond reasonable doubt' imposes a duty far greater than to establish the same fact by 'a fair preponderance'.
"*Kempf v. Himsel*, (1951) 121 Ind.App. 488, 98 N.E.2d 200 at 212. *See also Baker v. State*, (1957) 236 Ind. 55, 138 N.E.2d 641."

We find that although appellant's tendered instruction number one may be a correct statement of the law taken from the cases cited, "[t]he mere fact that certain language or expressions are used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury." *Jacks v. State*, (1979) Ind., 394 N.E.2d 166, 174. We do not find, moreover, that appellant's tendered instruction number one insofar as it distinguishes between burdens of proof in criminal and civil cases to be related to issues directly confronting the jury. "The purpose of an instruction is to inform the jury of the law applicable to the facts in such a manner that jurors will not be misled, and

that they may clearly comprehend the case and arrive at a just, fair, and correct verdict." *Foster v. State*, (1974) 262 Ind. 567, 320 N.E.2d 745, 748, cited in *Malo v. State*, (1977) 266 Ind. 157, 361 N.E.2d 1201, 1205. It is not error for the court to refuse an instruction which could mislead or confuse the jury. *Brewer v. State*, (1969) 253 Ind. 154, 252 N.E.2d 429. We find the language of appellant's tendered instruction number one to be more confusing than helpful to a jury and certainly more confusing than the distinctions between the two standards of proof which emerge from instructions numbered four, five, six, seven, eight, nine, twenty–one, and twenty–five as given by the court. All the instructions given by the court must be read together and construed as a whole. *Holland v. State*, (1976) 265 Ind. 216, 352 N.E.2d 752. We do not agree with appellant, therefore, that the trial court's instructions failed to define or explain adequately the terms "reasonable doubt" and "preponderance of the evidence." The court did not err in refusing to give appellant's instruction number one.

*Issue III*

The final allegation of error is that the jury's verdict is contrary to law because any rational trier of fact would have entertained a reasonable doubt as to whether Palmer suffered from a mental disease or defect at the time of the robbery sufficient to preclude his forming the requisite intent to commit the crime of robbery. Although appellant assures us that he is not asking us to reweigh the evidence or judge the credibility of witnesses in this case, we must point out that this is precisely what he is doing. We remind him that these functions are not ours. When appellant contends that there is not sufficient evidence to support the jury's verdict, we shall look only to the evidence most favorable to the state, and if there is sufficient evidence of proba-

tive value from which the trier of fact could reasonably infer guilt beyond a reasonable doubt, that conviction will be upheld. *Hicks v. State*, (1980) Ind., 401 N.E.2d 702; *Graves v. State*, (1980) Ind., 400 N.E.2d 139; *Malo v. State, supra.*

In the instant case there was conflicting testimony presented as to whether appellant's mental disease or defect precluded his appreciation of the wrongfulness of his conduct or his conforming his conduct to the requirements of the law.[3] At trial one court–appointed psychiatrist thought appellant could not appreciate the wrongfulness of his conduct; a second court–appointed psychiatrist was unable to offer an opinion on the matter; a third psychiatrist testified that Palmer was mentally competent to stand trial and not suffering from any mental disease or defect; the state's psychiatrist who had not examined Palmer personally but had reviewed his medical history testified that he did not think a person with Palmer's personality pattern would be unable to appreciate the wrongfulness of his conduct or to conform his behavior to the law, but he would not rule out such a possibility altogether. Other witnesses testified that on the night of the robbery, appellant exhibited no abnormal behavior, that his appearance was neat, and that his conduct appeared to be well thought out, rational, and cooperative. Although under the evidence presented in the record reasonable minds might have differed as to whether or not Palmer suffered from a mental defect at the time of the commission of the crime which mental defect was of such a nature as to constitute a defense, we cannot say as a matter of law that no rational trier of fact would have reached the conclusion that he was legally sane, and therefore guilty, beyond a reasonable doubt.

---

**3.** Ind. Code 35–41–3–6 provides the legislated definition of insanity which will relieve a defendant of criminal culpability:

"(a) A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the

wrongfulness of the conduct or to conform his conduct to the requirements of law.

"(b) 'Mental disease or defect' does not include an abnormality manifested only by repeated unlawful or antisocial conduct. *As added by Acts 1976, P.L. 148, Sec. 1. Amended by Acts 1977, P.L. 340, Sec. 11.*"

Having found sufficient evidence of probative value to support the jury's verdict, we affirm the conviction.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.