**F.W. WOOLWORTH COMPANY, INC.,
Woolco, Harry Hare, Everett Basham,
Defendant-Appellants,**

v.

**Larry ANDERSON, Plaintiff-Appellee.**

**No. 1–384A67.**

Court of Appeals of Indiana,
First District.

Dec. 20, 1984.

Rehearing Denied Jan. 29, 1985.

Joe E. Beardsley II, Beardsley & Stengel, Clinton, for plaintiffs-appellants.

Dennis R. Majewski, Terre Haute, Clelland Hanner, Gary Hanner, Hanner, Hanner & Hanner, Rockville, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

F.W. Woolworth Co., Woolco, Harry Hare [1] and Everett Basham (appellants) appeal from the entry of a judgment by the Parke Circuit Court following a jury verdict for Larry Anderson (Anderson) on his complaint for defamation and malicious prosecution. We affirm.

## FACTS

Between August 1980, and April 7, 1981, Larry Anderson was employed as the automotive department manager at Woolco's North Plaza store in Terre Haute, Indiana. As part of his duties, Anderson made a number of bulk sales of excess automotive department inventory. It is one of those transactions which is at the heart of this case.

On April 3, 1981, Jack Blake, a Woolco employee, met with his close friend Harry Hare, general manager of Woolco's North Plaza store. Blake told Hare that he suspected Anderson was not depositing receipts from bulk sales into the automotive department's cash registers.[2] Blake also informed Hare that he was quitting because of the allegedly illegal conduct of Anderson. Previously on April 1, or April 2, 1981, Anderson demoted Blake from assistant department manager to mechanic. Following this incident, Blake told Anderson that he would get even.

The same day Blake met with Hare, Anderson sold a large quantity of oil and oil treatment to Lawson Distributors for $1440.30 in cash. Anderson apparently deposited the proceeds from this sale in the cash registers of other departments throughout the store during the period April 3, 1981 to April 7, 1981. Hare had directed Anderson to record the receipts from bulk sales in this manner both to hide the unusual number of bulk sales being made and to increase net sales figures of the store's other departments.

After learning that Anderson would be making the sale to Lawson, Hare instructed an employee to monitor the automotive department's registers hourly. Subsequently, he also conducted a review of the tapes from the automotive department's cash registers for the sales made on April 3, 4 and 5. He did not review any deposits made to other department's registers or discuss the whereabouts of the receipts from the Lawson transaction with Anderson. After his abbreviated investigation, Hare concluded that Anderson had stolen the proceeds from the sale to Lawson. Subsequently, he contacted Woolworth's regional loss prevention director and Everett Basham concerning the alleged theft.

Everett Basham was employed as a part time security officer at Woolco's North Plaza store. He was also a full-time detective with the Terre Haute Police Department. Basham, acting in his capacity as a Terre Haute police officer, filed a probable cause affidavit seeking to have the Vigo county prosecutor file an information charging Anderson with theft. Anderson apparently had had several clashes with Basham during his tenure at the store. He had informed his superiors that he suspected Basham was removing merchandise from the store with Hare's knowledge. Anderson also had confronted Basham about Basham's harassment of female Woolco employees.

On April 7, 1981, the Vigo county prosecutor filed an information charging Anderson with theft. He was arrested at Woolco's that same day. On October 22, 1981, Anderson was found not guilty after a jury trial on the theft charges. He then initiated this suit for defamation and malicious prosecution against F.W. Woolworth Co., Woolco, Harry Hare and Everett Basham. The jury returned a verdict in favor of Anderson awarding him $110,000 compen-

---

1. It appears from the record that Mr. Hare died prior to the trial of this cause of action.

2. At the trial of this cause of action, Blake admitted that he never really saw what Anderson did with the cash he received from these bulk sales.

satory damages together with punitive damages in the amount of $150,000. Appellants then perfected this appeal.

## ISSUES

■ The appellants essentially raise four issues for our consideration.[3]

1. Whether the judgment of the trial court is supported by sufficient evidence.

2. Whether the trial court committed reversible error when it excluded the deposition of an unavailable witness.

3. Whether the trial court erred when it refused an instruction tendered by appellants which set out the advice of counsel defense.

4. Whether the trial court erred when it read two of the appellee's punitive damages instructions.

## DISCUSSION AND DECISION

*Issue One*

■ Initially, appellants assert that there is insufficient evidence contained in the record to support the trial court's judgment. Of course, our appellate review of such questions is necessarily limited. We will neither reweigh the evidence nor judge the credibility of witnesses. Rather, we will consider only the evidence most favorable to the judgment along with all reasonable inferences which may be drawn from that evidence. Only in those instances where the evidence points to a single conclusion different from the one reached by the trial court may we reverse on grounds of insufficient evidence. *Kiracofe v. Reid Memorial Hospital,* (1984) Ind.App., 461 N.E.2d 1134, 1140; *Trinity Lutheran Church, Inc. v. Miller,* (1983) Ind.App., 451 N.E.2d 1099, 1102, *trans. denied.* A care-

ful review of the record before us reveals that it contains sufficient evidence to support the trial court's judgment.

■ The essential elements of a malicious prosecution action have been set out by the courts of this state on a number of occasions. In order to succeed, the plaintiff must prove, by a preponderance of the evidence, that: (1) the defendant instituted or caused to be instituted a prosecution against the plaintiff; (2) the defendant acted maliciously in so doing; (3) no probable cause existed to justify institution of the prosecution; and, (4) ultimately the prosecution was terminated in the plaintiff's favor. *Duckwall v. Davis,* (1924) 194 Ind. 670, 675, 142 N.E. 113, 114; *Wong v. Tabor,* (1981) Ind.App., 422 N.E.2d 1279, 1283; *Barrow v. Weddle Brother's Construction,* (1974) 161 Ind.App. 601, 605, 316 N.E.2d 845, 849; *Boyd v. Hodson,* (1947) 117 Ind.App. 296, 301, 72 N.E.2d 46, 68. It is absolutely clear from the record that appellants caused to be instituted a prosecution of Anderson which was ultimately resolved in his favor. Appellants argue, however, that there is insufficient evidence in the record to establish either that the prosecution was instituted without probable cause or that they acted maliciously.

■ "Probable cause for the institution of a criminal prosecution exists where the facts found on reasonable inquiry would induce a reasonably intelligent and prudent person to believe that the accused had committed the crime charged." *McQueen v. City of Indianapolis,* (1980) Ind.App., 412 N.E.2d 138, 140. The evidence most favorable to the judgment is sufficient to support a finding that the appellants acted without probable cause. That evidence establishes that Anderson deposited all of the

---

**3.** Appellants also raise two issues which we can dispose of in summary fashion. They argue that the trial court erred when it denied their Motion for Judgment on the Evidence made at the conclusion of their case-in-chief. Of course, we treat such an issue as another attack on the sufficiency of the evidence. *Jackson v. State,* (1980) 273 Ind. 49, 56, 402 N.E.2d 947, 951. Consequently, its resolution is controlled by our discussion of the sufficiency question. Appel-

lants also urge that the trial judge committed error when he denied their Motion for Judgment on the Evidence made at the conclusion of the plaintiff's case-in-chief. However, when the appellants chose to present their case they waived any error occasioned by the trial court's ruling. *American States Insurance Co. v. Morrow,* (1980) Ind.App., 409 N.E.2d 1140, 1141, *trans. denied.*

cash received from the sale to Lawson Distributors in the cash registers of various departments throughout the store during a five day period following the sale. Additionally, appellants were aware, or should have been aware, of this since Hare had been the one who instructed Anderson to record bulk-sales in this manner. The appellants, therefore, had no reason to believe that Anderson had committed theft. Consequently, no probable cause existed to institute, or cause to be instituted, a criminal prosecution of Anderson.

There also was sufficient evidence presented at trial from which the jury could have inferred the existence of malice. First, malice may be inferred from the institution of a criminal prosecution without probable cause. *Satz v. Koplow,* (1979) Ind.App., 397 N.E.2d 1082, 1085, *trans. denied; Stivers v. Old National Bank,* (1970) 148 Ind.App. 196, 200, 264 N.E.2d 339, 342. As we indicated above, probable cause did not exist to justify the institution of a criminal prosecution of Anderson. Secondly, malice may be inferred from the failure to conduct a reasonable or suitable investigation. *Pontius v. Kimble,* (1914) 56 Ind.App. 144, 146, 104 N.E. 981, 982; 10 I.L.E. *Malicious Prosecution* § 9 (1959). The appellant's investigation consisted largely of reviewing cash register tapes from the registers in the automotive department alone. No investigation was conducted to determine whether or not Anderson might have deposited the money in another department's registers. From these facts, the jury could have concluded that the appellants did not conduct a reasonable investigation and, therefore, acted with malice. Finally, malice may properly be inferred from the existence of personal animosity. *Satz,* at 1085. During the trial, Anderson produced substantial evidence which tended to establish that personal animosity did exist between himself and the appellants. For instance, Anderson admon-

ished Basham for harassment of female Woolco employees. Anderson had also reported Basham and Hare to his superiors for allegedly stealing merchandise from the store. Consequently, sufficient evidence existed from which the jury could have properly inferred the existence of malice.

Appellants also assert that there was insufficient evidence to support an award of punitive damages. However, as our discussion above discloses, there was substantial evidence tending to show that the appellants acted maliciously. In addition, we note that the jury was instructed on the proper standard of proof. We think that the award of punitive damages was based on sufficient evidence.

*Issue Two*

On October 17, 1983, appellants served notice on Anderson informing him that a former Woolco employee would be deposed in Dallas, Texas, on October 20, 1983, just five days prior to trial. At trial, Anderson objected to the admission of the deposition based on the lack of timely notice. Even though this was the first time Anderson had objected to the deposition, the trial court sustained his objection.[4] Appellants now urge that the trial court's ruling excluding the deposition constituted reversible error.

Even if the deposition were properly admissible, the burden is on the appellants, as the offering parties, to show that they were prejudiced as a result of the erroneous exclusion. *United Farm Bureau Mutual Insurance Co. v. Blanton,* (1983) Ind.App., 457 N.E.2d 609, 613; *City of Indianapolis v. Ervin,* (1980) Ind.App., 405 N.E.2d 55, 62. In their brief, appellants make no attempt to demonstrate how they were prejudiced by the exclusion of the deposition. Our own review of the record reveals that virtually all of the evidence contained in the deposition was elicit-

---

**4.** Indiana Rules of Procedure, Trial Rule 32(D)(1) states:
 "(D) Effect of errors and irregularities in depositions.

 (1) As to notice. All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice."

ed from other witnesses. Absent some specific showing of prejudice, the trial court's exclusion of the deposition can not be reversible error. *United Farm Bureau,* at 613.

*Issue Three*

Appellants next assert as error the trial court's failure to read the instruction they tendered on the advice of counsel defense. That tendered instruction read as follows:

## "DEFENDANT'S INSTRUCTION NUMBER 6

If you find by a preponderance of the evidence that the defendant acted in good faith and fully and truthfully made known all facts which were reasonably apparent to prosecuting attorney and that such prosecuting attorney advised the bringing of the criminal prosecution such finding would establish probable cause."

Record at 118. Appellants argue that they were entitled to have this instruction read to the jury since it was a correct statement of the law with regards to the advice of counsel defense, supported by the evidence, and not adequately covered by the instructions actually given. We disagree.

 Appellants correctly point out that the language of their tendered instruction is derived from various opinions of the appellate courts of this state.[5] *See Indianapolis Traction and Terminal Co. v. Henby,* (1912) 178 Ind. 239, 97 N.E. 313; *Peoples Bank and Trust v. Stock,* (1979) 181 Ind.App. 483, 392 N.E.2d 505, *trans. denied; Treloar v. Harris,* (1917) 66 Ind. App. 59, 117 N.E. 975. However, the mere fact that certain language is employed in a judicial opinion does not necessarily make it appropriate language for a jury instruction. *English Coal Co., Inc. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 310, *trans. denied; Palmer v. State,* (1980) Ind.App., 411 N.E.2d 643, 646, *trans. denied, cert. denied* (1981), 454 U.S. 842, 102 S.Ct. 154, 70

L.Ed.2d 126. In this particular case, the appellant's tendered instruction was properly refused despite the fact that it was derived from the language of Indiana appellate opinions.

 Appellant's advice of counsel instruction is an incomplete statement of the law in at least two respects. First, in order to rely on advice of counsel, a defendant must not only make a complete and truthful disclosure of all facts within his immediate knowledge, he is also required to disclose all facts which he could have ascertained by the exercise of due diligence. *Galloway v. Stewart,* (1874) 49 Ind. 156, 160; *Scotten v. Longfellow,* (1872) 40 Ind. 23, 30; *Peoples Bank and Trust,* at 490, 392 N.E.2d at 510; *Treloar,* at 78, 117 N.E. at 981; 19 I.L.E. *Malicious Prosecution* § 6 (1959). Appellant's tendered instruction merely required them to fully and truthfully disclose all facts which were reasonably apparent to them. The tendered instruction also failed to set out the requirement that the counsel consulted must be competent and disinterested. This showing is an essential prerequisite to the invocation of the advice of counsel defense. *Peoples Bank and Trust,* at 490, 392 N.E.2d at 509. Of course, reversible error cannot be predicated on the refusal to give a tendered instruction which incorrectly or incompletely states the law. *Talge Mahogany Co. v. Burrows,* (1921) 191 Ind. 167, 180, 130 N.E. 865, 870; *Ernst v. Sparacino,* (1978) 177 Ind.App. 610, 616, 380 N.E.2d 1271, 1275. Therefore, no error occurred when the trial court refused appellant's advice of counsel instruction.

*Issue Four*

At trial Anderson tendered two instructions on punitive damages which the trial court read to the jury. Those instructions stated:

Jury Instructions, 27.49 (1968).

---

**5.** The language of Defendant's Instruction Number 6 is taken directly from Indiana Pattern

"PLAINTIFF'S INSTRUCTION NO. 1

I instruct you that in an action for malicious prosecution the plaintiff may recover all damages which are the natural [and] probable consequences of the malicious prosecution complained of. The plaintiff, if entitled to damages, may thus recover as compensatory damages the pecuniary loss which results directly from such prosecution. He may also recover as exemplary and punitive damages for the non-pecuniary losses, if any have been sustained. Within this second class of damages are included the injuries to the plaintiff's reputation, since an accusation of a crime made under the pretense of bringing a person guilty of such crime before the bar of justice is made in an imposing and impressive manner and the reputation of the party so accused may have inflicted upon it a deeper and longer lasting injury than would be inflicted thereon if the same charges were uttered under other circumstances. Consideration can also be given in awarding such damages to the humiliation, embarrassment, mental suffering, physical pain, discomfort and inconveience [sic], caused by such prosecution if the same are shown to be the direct and proximate results of the defendants action."

Record at 101.

"PLAINTIFF'S INSTRUCTION NO. 9

You are instructed that exemplary [damages] are damages awarded to plaintiff over and above what will (barely) compensate him for his property loss, where the wrong done to him was aggravated by circumstances of violence, oppression, malice, fraud wanton wicked conduct on the part of the defendants and are intended to solace the plaintiff for mental anquish [sic], (laceration of his feelings), shame, or other aggrava-

tions of the original wrong and/or to punish the defendants for their evil behavior or to make an example of them."

Record at 108. Appellants argue that it was error to give these instructions for essentially two reasons.[6] First, they assert that the instructions are incorrect statements of the law in regards to punitive damages. Second, appellants challenge them because they omit any reference to the required standard of proof. We cannot agree with the appellant's contentions.

 The challenged instructions are correct statements of the law on punitive damages. *See Peoples Bank and Trust*, at 496, 392 N.E.2d at 513; *James v. Picou*, (1974) 162 Ind.App. 134, 137, 318 N.E.2d 377, 379; *Snider v. Lewis*, (1971) 150 Ind. App. 30, 57, 276 N.E.2d 160, 174, *trans. denied*; *Dwyer v. McClean*, (1961) 133 Ind. App. 454, 457–58, 175 N.E.2d 50, 52, *trans. denied*. This is not to say that the language employed by Anderson is perfect. Plaintiff's Instruction No. 1 is, in fact, somewhat argumentative. Appellants did not, however, object to the instruction on that basis.

 Furthermore, Anderson's punitive damages instructions are not objectionable even though they do not include the standard of proof required for the award of punitive damages. As this court has stated on several occasions, not all applicable law must be included in a single instruction. *Palmer v. Decker*, (1970) 253 Ind. 593, 601, 255 N.E.2d 797, 801; *Grad v. Cross*, (1979) 182 Ind.App. 611, 614, 395 N.E.2d 870, 873. Rather, we will look to the instructions as a whole to determine whether the jury was properly instructed. *Id.* A review of the instructions actually given reveals that the jury was properly instructed that they could award punitive damages only upon clear and convincing evidence. Thus, no

---

6. Appellants also appear to argue that Plaintiff's Instruction No. 1 is improper because it requires the jury to award punitive damages in these circumstances. They cite *Reel v. Beckner*, (1971) 149 Ind.App. 663, 274 N.E.2d 548, and *Indiana Bell Telephone Co. v. Ice Service, Inc.*,

(1967) 142 Ind.App. 23, 231 N.E.2d 820, *trans. denied*, to support their argument. The instruction in this case is not, however, similar to those attacked in the cited cases. Thus, we find no merit in this argument.

reversible error occurred when the trial court gave these instructions.

The judgment of the trial court is affirmed.

NEAL, P.J., and ROBERTSON, J., concur.